BROWN v. COMMISSIONER OF IN-
TERNAL REVENUE.

No. 12885.

United States Court of Appeals
Fifth Circuit.

March 24, 1950.

L. J. Benckenstein, Beaumont, Tex., for petitioner.

Hilbert P. Zarky, Ellis N. Slack, Maryhelen Wigle, Helen Goodner, Special Assistants to Attorney General, Theron L. Caudle, Assistant Attorney General, Charles Oliphant, Chief Counsel, Bureau Internal Revenue, Bernard D. Daniels, Special Attorney, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and WALLER and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This is a petition for review of a decision of the Tax Court sustaining a deficiency in petitioner's income tax for the calendar year 1944 in the amount of $6,415.54.

The question for decision is whether the Tax Court erred in holding that certain oil royalties which were paid to the taxpayer in 1944 were not tax-exempt income under the provisions of Section 22(b) (3) of the Internal Revenue Code, 26 U.S.C.A. § 22 (b) (3). The facts are not in dispute. They were all stipulated in the court below, and for present purposes may be summarized as follows:

The petitioner, a citizen and resident of the State of Texas, is one of three children of Dr. E. W. Brown and his wife Carrie L. Brown (both deceased). The maternal grandmother of petitioner was Frances Ann Lutcher of Orange, Texas, who died testate in October 1924, leaving a large and varied estate consisting in part of lands situated in Texas and Louisiana; the total estate being valued at approximately $10,-000,000. Mrs. Lutcher was survived by two daughters, Carrie L. Brown and Miriam M. Stark, her sole heirs at law. In 1924-1925 the will of Mrs. Lutcher was probated in Orange County, Texas and H. J. L. Stark, hereinafter sometimes called Stark, was named independent executor, but no probate proceedings were instituted in Louisiana until the year 1944. In her will Mrs. Lutcher gave to each of her daughters the sum of $1,000,000 and the residue of the estate, after the payment of special bequests she gave to her grandson Stark, whom she named as her sole executor. In her directions to the executor she provided in part: "I specially authorize my said executor to sell and dispose of any portion of my estate or all of same as he may see proper at public or private sale and in the manner, for the price, and upon the terms, that to him may seem best and proper, for the purpose of carrying out the provisions and all of the provisions of this will."

On April 27, 1934 Stark, as executor of the estate, granted to the Sun Oil Company an oil, gas and mineral lease to the undivided or fractional interest in certain lands owned by the Lutcher estate in indivision with others (including Mrs. Carrie L. Brown), all of whom, including petitioner, joined in the lease in so far as it affected their respective interests in lands situated in Lafourche, Assumption and Terrebonne Parishes, Louisiana. A one-eighth oil royalty was reserved. The Sun Oil Company entered upon the lands pursuant to the lease and in 1938 developed oil production from a portion thereof. All oil royalties accruing to the lands under the lease were impounded by agreement of the Brown and Stark families pending the settlement of

various controversies existing between them.

In October 1941 Carrie Brown died testate and at the time of her death had not received the legacy which her mother had willed to her. She was survived by two sons, the petitioner and his brother, E. W. Brown, Jr., and one granddaughter, Mrs. Babette Moore Odom, a child of a deceased daughter. In her will she gave all of her property, except minor gifts, to her two sons and granddaughter in proportions of ⅜ths to petitioner, ⅜ths to E. W. Brown, Jr., and ¼th to Mrs. Odom. Her will was probated in Texas within 3 months after her death and thereafter in Louisiana in 1943-1944.

Miriam M. Stark died in 1936, leaving as her sole heir H. J. L. Stark, to whom she had previously donated the legacy of $1,000,000 which her mother had willed to her.

For many years various disputes and controversies existed between petitioner, E. W. Brown, Jr., and Mrs. Odom on the one side and Stark and Lutcher-Moore Lumber Company, of which Stark was president, on the other side. On July 7, 1943 members of the Stark Group and members of the Brown Group entered into a compromise and settlement of their differences, including a compromise payment of Carrie Brown's legacy. The terms of this compromise agreement were evidenced by two written instruments, which all parties executed in their individual capacities and as legatees, devisees, executors, fiduciaries and officials of the various entities which they represented or in which they held interests.

The first of the two instruments recites that the Stark Group had paid to the Brown Group the sum of $137,255.30 in cash, the receipt of which was acknowledged; and further provides:

"Each and every individual, fiduciary, estate, corporation or other legal entity hereinabove named as comprising the Stark Group, * * * *Have Granted, Bargained, Sold, Conveyed, Transferred, Assigned, Set Over and Delivered, and by these presents do Grant, Bargain, Sell, Convey, Transfer, Assign and Deliver* unto E. W. Brown, Jr.,

H. L. Brown and Mrs. Babette Moore Odom, * * * the properties described and enumerated on that exhibit * * * marked Schedule 'A' * * *

"To Have And To Hold the said properties, * * * forever; and * * * the Stark Group *do hereby* severally bind themselves, * * * to warrant and forever defend all and singular the said properties * * * against every person whomsoever lawfully claiming * * * by, through or under them * * *

"*All ad valorem taxes on said properties for 1943 and subsequent years are hereby assumed,* and shall be paid by the said grantees of said properties." (Emphasis supplied.)

It was stipulated that the parties would institute and prosecute to conclusion proceedings necessary to probate the will of Mrs. Lutcher in Louisiana, and that the parties would divide the probate expenses and inheritance or estate taxes due the State of Louisiana equally among the two groups. The agreement then provides for conveyances from the Brown Group to the Stark Group as follows:

"* * * the Brown Group, in consideration of said compromise and settlement and $100.00 cash in hand * * * *have* Granted, Bargained, Sold, Conveyed, Transferred, Assigned, Set Over and Delivered * * * unto the Lutcher & Moore Lumber Company, the properties * * * enumerated on * * * Schedule 'B' * * *

"* * * the Brown Group, in consideration of said compromise and settlement and * * * $100.00 cash to them * * * have Granted, Bargained, Sold, Conveyed, Transferred, Assigned, Set Over and Delivered, * * * unto * * * H. J. Lutcher Stark all properties, * * * and all interests in property of every kind * * * owned by Frances A. Lutcher at the time of her death * * * or thereafter acquired by her estate, Save * * * such thereof as may be included * * * on the exhibit * * * marked Schedule 'A'.

"Each and all of the parties hereto agree that they and each of them will, from time

to time and as often as required, execute and deliver *such further and other conveyances, quitclaims, releases, transfers and other written assurances of title* as may be required to accomplish the purposes as in this agreement set forth, to the end that there may be placed of record in the public records of * * * the parishes of Louisiana, proper *evidences* of the title to any properties *hereinabove conveyed, confirmed and quitclaimed, or intended to be conveyed, confirmed and quitclaimed,* * * * and to cause the Sun Oil Company to pay over to * * * (the Brown Group) all rents, royalties, revenues or income now being held by it for the account of the Estate of Mrs. Frances A. Lutcher, * * *" (Emphasis supplied.)

Schedule "A" is a list of lands and oil, gas, sulphur and other mineral rights and interests located in the States of Texas and Louisiana. The last paragraph thereof reads as follows: "*It being the desire and intention to convey hereby all lands* owned by the said Mrs. Frances A. Lutcher in said Parishes at date of her death, or thereafter acquired by the Estate of Mrs. Frances A. Lutcher, or H. J. L. Stark as Executor of the Estate of Mrs. Frances A. Lutcher together with all rents, royalties, revenues and incomes now due or to become due under all mineral or other leases upon said lands with full subrogation and substitution to all right of ownership, reversion and privileges * * *" (Emphasis supplied.)

The second instrument executed the same day recited that the parties had entered into an agreement whereby they had mutually composed all of their rights and differences with respect to the will and estate of Mrs. Lutcher and that as a result the parties have agreed:

" * * * that the will of Mrs. Frances A. Lutcher shall be filed for registry and probate in * * * Louisiana, * * * the inheritance or estate taxes, if any, due the State of Louisiana to be fixed, and the Second Parties placed in possession of the real estate * * * together with all rents, royalties * * * now due or to become due * * *. It being understood and agreed that should either one or more of the parties hereto fail or refuse to join in the said application * * * for the purpose of accomplishing the above purposes, such * * * shall not preclude any one or more of the remaining parties hereto from instituting such proceedings * * * and to cause same to be prosecuted to a conclusion * * *."

Thereafter, the Stark and Brown Groups filed their joint petition in the 17th Judicial District Court, Parish of Terrebonne, State of Louisiana, as contemplated under the agreement, and the court on June 30, 1944 decreed: (1) that it was vested with jurisdiction of the estate, (2) fixed the amount of inheritance taxes due the State and (3) further decreed that: "* * * E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore, wife of Edgar R. Odom, be and they are hereby recognized and decreed to be the owners in the proportions of an undivided ⅗th interest in the said E. W. Brown, Jr., an undivided ⅗th interest in the said H. L. Brown and an undivided ⅕th interest in the said Mrs. Babette Moore * * * and as such owners in such proportions are entitled to the possession, and are hereby sent and put in possession, all subject to the terms and conditions of that certain contract and agreement dated the 7th day of July, 1943 * * *."

On August 15, 1944, the Sun Oil Company paid the royalties that had accrued to the lands of the estate in the aggregate amount of $66,496.98 ($44,799.82 accrued to June 1, 1943 with an additional $21,697.16 accrued between June 1, 1943 and June 30, 1944), in the proportions of ⅖ths each to E. W. Brown, Jr., and petitioner and ⅕th to Mrs. Odom.

The Commissioner determined that the royalties which accrued between June 1, 1943 and June 30, 1944 constituted income to petitioner, H. L. Brown, and Babette Moore Odom for the year 1944 but he did not determine and has never taken the position that petitioner is taxable on any part of his proportional share of the $44,798.82 of royalties which accrued prior to June 1, 1943. Consequently, there is no issue here in respect to the taxability of those royalties which accrued prior to June 1, 1943.

The Tax Court held that part of the oil royalties in question which accumulated subsequent to the settlement agreement of July 7, 1943 was not excludable from the taxpayer's gross income for 1944, the year of payment, under the provisions of Section 22(b) (3) of the Internal Revenue Code. But the Tax Court declined to tax petitioner on his percentage of the royalties which had accumulated between June 1, 1943 and July 7, 1943 because, in its opinion, the Lutcher estate was at that time the owner of the oil lands.

The pertinent statute, Section 22(b) (3) of the Internal Revenue Code, 26 U.S.C.A. § 22(b) (3), provides *inter alia* that there shall not be included in taxable income: "The value of property acquired by gift, bequest, devise, or inheritance. *There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. * * * "* (Emphasis added.)

The petitioner contends that the agreements of July 7, 1943, in so far as they related to the lands of the estate of Lutcher, were executory and neither divested the estate of Lutcher or invested petitioner with the ownership of such lands. That Stark in his capacity as Texas executor of the estate of Lutcher or as her residuary legatee was as a matter of law totally incompetent to divest the estate and invest petitioner with the ownership of a portion of the properties of her estate situate within the State of Louisiana. Citing numerous Louisiana authorities in support of his contention, petitioner insists that he did not receive any interest in the Louisiana property prior to the entry of the judgment in the State court on June 30, 1944. Accordingly, he argues that the royalties in question were a part of his mother's legacy under the will of Mrs. Lutcher, which he had inherited from the former upon her death in 1941, and as such was exempt from taxation.

Now it is true, as petitioner suggests, that the law of Louisiana declares that no will can have effect unless it has been presented to the judge of the Parish in which the succession is opened; and that testaments made in other states cannot be carried into effect on property in Louisiana, without being registered in, and ordered to be executed by the court within the jurisdiction in which the property affected is situated. We also agree that the laws of Louisiana do not confer upon one holding a foreign appointment as executor or residuary legatee authority to perform any official act in Louisiana, in controlling property that belonged to the decedent, until the Louisiana statute relating to the probate of foreign wills has been complied with, but we do not agree that either the laws or the decisions cited are determinative of the present issue.[1]

The law which governs the title to and the disposition of land is always that of the place where the land is situated. And where as here, a decedent leaves property in two or more states, the property in each is a separate succession for the purpose of administration.[2] In Louisiana a succession is acquired by the legal heir, who is called to the inheritance, immediately after the death of the deceased person to whom he succeeds. The maxim *"le mort saisit le vif"* is basic in Louisiana jurisprudence.[3] And the rule to the effect that the legal heir, or the instituted heir, is called to the inheritance immediately after the death of the deceased is intended to guard against the carrying into effect of testamentary dispositions which may be at variance with the law or public policy of the State and to the prejudice of forced heirs and creditors.

Every person having any interest whatever in the property of the estate of Mrs. Lutcher, whether as heir, legatee, devisee, or executor, was present and entered into the agreements of July 7, 1943 in every pertinent capacity he or she possessed, includ-

---

1. Cf. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410.

2. Atkinson v. Rogers, 14 La.Ann. 633; Article 1220 of the Civil Code of Louisiana.

3. O'Donald v. Lobdell, 2 La. 299.

ing his or her individual capacity. This being the situation it follows that the ownership[4] of the property was in the parties who entered into the agreements. We know of no law in Louisiana that prohibits agreements of the type here involved and certain it is the cases cited by petitioner do not so hold, though language seemingly supportive of petitioner's contention is to be found in Act No. 127 of Ex.Sess. of the Louisiana Legislature of 1921. However, the Supreme Court of Louisiana has construed this statute and its predecessor Act No. 109 of 1906, as amended by Act No. 199 of 1920, and has consistently held that although the language therein provides that the heirs shall be without right or capacity to alienate any part of the inheritance until the tax on the whole shall have been fixed by the court and paid that the statute does not prohibit the alienation of property inherited without previous payment of the inheritance tax, but only the alienation thereof otherwise than subject to the inheritance tax.[5]

Under the terms of Mrs. Lutcher's will Stark was specifically authorized to dispose of any portion of the estate as he alone saw fit. The contention that Stark in his capacity as executor had no power to make a valid agreement with respect to the Louisiana properties does not take into account the fact that Stark also acted in his individual capacity. That which Stark could not do as an executor is no criteria of his capacity as an individual because an executor as an individual and as an official is, in the eyes of the law, two separate and distinct persons.[6] In our opinion Stark had full power to divest the Lutcher estate of

these properties as here he did. The words used in the agreements were those of present and absolute grant. Words which not only negate the idea that the agreements were intended to be executory but which, on the contrary, clearly show that the parties intended from the date of the signing of the agreements that the lands in question and the oil royalties "now due or to become due" should be the property of the Brown interests. It is true that certain things remained to be done before the Brown Group could be put into possession of the land and royalties but this did not have the effect of postponing the transfer of the properties and their increment until such time as the State court entered its order. Necessarily the decree was later but it has no definite relation to the time when title to the properties and royalties passed to the Brown interests. The probate court was not asked to do, nor did it do, nor could it do anything affirmatively in the matter other than to fix as it did the amount of inheritance tax. The decree which it entered conferred no new right; it merely recognized and ratified the acts of the parties on July 7, 1943, and the legal title which it gave relates back to the date of the settlement agreement.

By reason of the foregoing, we conclude as did the Tax Court that petitioner acquired his interest in these properties on the settlement agreement date, and that consequently his share of the royalties on the properties which accrued after that date constituted taxable income to him in the year of payment.

Judgment affirmed.

4. Articles 940, 941, 942, 944, 1607, 1609, 1613 of the Civil Code of Louisiana.

5. Bonvillain v. Richaud, 153 La. 431, 96 So. 21; Barbarich v. Meyer, 154 La. 325, 97 So. 459; Green v. W. G. Ragley Lumber Co., 154 La. 965, 98 So. 544; Prieto v. Faure, 169 La. 75, 124 So. 150.

6. Hargrave v. Turner Lumber Co., 194 La. 285, 193 So. 648, 650.