JAMES WICKLIFFE, MARY BELLE LITTLE and
BESSIE LEE COONES, Respondents, v. GEORGE
P. WICKLIFFE, GOLDIE BEAMAN, JAMES
BAKER and NETTIE BAKER EMERY, Defend-
ants.

Kansas City Court of Appeals, December 13, 1920.

1. **WILLS: Legacies: Ademption Defined.** Ademption is the technical
term used to describe the act by which the testator pays in his
lifetime to his legatee a general legacy which, by his will, he has
promised to give at death; or else, the act by which a specific
legacy has become inoperative on account of the testator having
parted with the subject.

2. ———: **Ejusdem Generis Necessary to Strict Ademption: Not an
Issue Where Legatee Satisfied by Gift of Different Kind.** Where
a will gives a general legacy of an undetermined amount should
testator die seized thereof and a subsequent deed to the heirs
conveys his real estate without limitation, condition or restric-
tion, and without any reference whatever to the will, or to the
legacy therein contained, the property is not *ejusdem generis*,
which is necessary in all cases of strict ademption, but question
of *ejusdem generis* is not in issue, if it appear that the testator
intends to satisfy the legatee by a gift of a different kind, and
that such intention, rather than the character of the property,
will determine the matter.

3. ———: **Legacies: Satisfaction: Substitution: Gift in Satisfaction
of Legacy or as Advancement Requires Consent of Donee or Legatee.**
Where the subsequent gift is in the nature of satisfaction of a
legacy, or given in substitution thereof, or is treated as an ad-
vancement out of the testator's estate, the same must be by the
consent of the donee or legatee.

4. ———: **Statute Relating to Advancements Not Applicable where
There is a Will, Applies Only to Intestacy: Equitable Presumption:
Legacy or Advancement, Ejusdem Generis.** Section 337, Revised
Statutes 1909, in reference to advancements does not apply where
there is a will, but applies only in cases of intestacy and the
equitable presumption is that the legacy and the subsequent por-
tion, or advancement, must be *ejusdem generis*.

5. **WILLS: No Equitable Presumption: Satisfaction: Parol Evidence Inadmissible to Show Deed Given as Satisfaction or substitution of Legacy.** Where there is no equitable presumption of satisfaction, extrinsic evidence cannot be admitted to reveal intention of grantor and no presumption arises that the grantor at the time he made certain deeds did not intend that his children should receive an equal portion of his estate, and if subsequent gift is construed as an ademption, satisfaction or substitution of legacy provided in will, it not only changes the written deeds by adding thereto, by parol, but also makes a new will, or revokes a portion of the old will, which could not be done by admitting such evidence as the same violates sections 538 and 583, Revised Statutes 1909, requiring courts to have due regard for directions in wills, and that revocation thereof must be by a subsequent will in writing.

6. ———: **Revocation of Statutory Method, Occurs Where all Property Disposed of Leaving None for Will to Operate Upon.** Where the legacy is specific and the testator disposes of it, so that the will can no longer operate on it, or where the testator disposes of all his property leaving the will nothing upon which to operate, such disposition of property is a revocation of the will outside of the statutory method provided in section 538, Revised Statutes 1909.

8. ———: **Statutes of Frauds and Wills Have Controlling Effect Upon Question of Ademption, Satisfaction or Substitution.** The Statute of Frauds, and Statute, in reference to Wills, and their revocation, have a direct and controlling effect upon the question of ademption, satisfaction or substitution.

Appeal from Benton Circuit Court.—*Hon. C. A. Calvird, Judge.*

AFFIRMED.

*Lamm, Bohling & Lamm* for respondent.

*W. S. Jackson, A. W. Thurman* and *Paul Koontz,* for appellant.

TRIMBLE, J.—This case originated in the probate court, and arose by way of exceptions filed to the final settlement of Henry P. Lay, Executor of the last will and testament of Z. T. Wickliffe, deceased. In said final settlement the executor charged, or indicated that he would charge, the share of each of three of testator's children

with the price paid by said testator for certain real estate which he, subsequently to the execution of the will, respectively conveyed to them. Said three children thereupon filed their exceptions thereto and, when they were overruled, an appeal was taken by them to the circuit court. There the exceptions were sustained, whereupon the other legatees appealed to this court. Z. T. Wickliffe had four children living and two dead. One of the latter left one child and the other left two children. The four living children were Mary Bell Little, James R. Wickliffe, Bessie Lee Coones, and George Wickliffe. Goldie Beaman was the only child of one deceased daughter, and James Baker and Nettie Baker Emery, were the two children of the other deceased daughter.

On April 7, 1914, Z. T. Wickliffe made his will. The first clause thereof directed his executor to pay all just debts. The second paragraph specifically devised to his son, George P. Wickliffe, a lot in the city of Warsaw, which the testator valued in his will at $1500.

The third paragraph of the will, which is the one involved in this controversy, provided that—

"Third, I will, devise and bequeath all of the remainder of the property of which I may die the owner, whether real, personal or mixed, to my children and grandchildren, as follows, to-wit: To my son James R. Wickliffe the one-sixth part thereof in fee. To my daughter Mary Belle Little the one-sixth part thereof in fee. To my daughter Bessie Lee Coones the one-sixth part thereof in fee. To my son George P. Wickliffe the one-sixth part thereof in fee; provided that in setting off the share of the said George P. Wickliffe and in arriving at the total for distribution, the real estate specifically devised to the George P. Wickliffe in paragraph second above shall be brought into hotchpot at a valuation of fifteen hundred dollars, and at such valuation shall be deducted from the share of the said George P. Wickliffe in my residuary estate, so found, so that including said real estate at such valuation he shall receive the one-sixth part of my estate."

The will then gave to Goldie Beaman, only child of one of testator's deceased daughters, a "one-sixth part" and to each of his grandchildren, James Baker and Nettie Baker Emery, the one-twelfth part in fee, with a provision that, in the event of the death of either without issue prior to the final distribution of the estate, such share should go to the survivor; and in case of such death of both, then the part due them should be equally divided. This provision, however, is not material here.

After making the above will in April, 1914, the testator, Z. T. Wickliffe, in the latter part of the year 1914, bought three farms, for one of which he paid $2800, for another $2480 and for the third he paid $1800, and on this last mentioned tract he expended $650 in improvements. He took the title to these tracts in his own name. Mary Belle Little went upon the first, James R. Wickliffe on the second and Bessie Lee Coons on the third, and they remained on said farms respectively up to some time in 1917. In September of that year, testator made warranty deeds conveying each of said farms to the child thereon. These deeds were in the usual form of warranty deeds which conveyed absolute estates without any limitations or conditions whatever for an expressed consideration of one dollar. Testator placed them on record and shortly after, in 1918, the deeds thus recorded were delivered to the respective grantees, were accepted by them, and since that time they have been in possession claiming title under said deeds.

In August, 1918, said testator died and his will was duly probated and eventually final settlement was filed by the executor as heretofore stated. Aside from whether the amounts expended as above stated by the testator for said farms should be included in said settlement, the record shows that there are between $5000 and $6000 in the hands of the executor belonging to the estate and to be distributed under the will. At the time testator made his will, he owned no real estate except the lot devised to George P. Wickliffe. He had previously owned a large farm but had sold it.

It is the contention of appellants that the gift of the farm to each of the three children aforesaid, after the execution of the will, constituted an ademption of the legacy given in the will to each of the children. "Ademption is the technical term used to describe the act by which a testator pays in his lifetime to his legatee a general legacy which, by his will, he had promised to give him at death; or else, the act by which a specific legacy has become inoperative on account of the testator having parted with the subject." [Cozzens v. Jamison, 12 Mo. App. 452, 456; Langdon v. Astor's Extrs., 116 N. Y. 9, 40.] It is manifest that the ademption does not and cannot arise under the second clause of the definition above quoted; and the ademption contended for, if there is any, must come under the first clause thereof. But the act of the testator does not come strictly and literally within it. The will gives a general legacy of an un-determined amount, namely, the "one-sixth part" of "all of the remainder of the property of which I may die *the owner* whether real, personal or mixed;" while the subsequent deed to each child conveys a farm without limitation, condition or restriction, and without any reference whatever to the will or to the legacy therein contained. The property is not *ejusdem generis* which is necessary in all cases of *strict* ademption. [1 Am. & Ency. of Law (2 Ed.), 618.] But appellant contends that the question of *ejusdem generis* is not in issue if it appear that the testator *intended* to satisfy a legacy by a gift of a different kind, and that such intention rather than the character of the property will determine the mater. No doubt it will if that intention can be ascertained, but that is the very question at issue, whether under our statutes, hereinafter cited, we can look to any extrinsic evidence to ascertain that intention? It will be observed also that said contentnion of appellants puts the subsequent gift in the naure of a *satisfaction* of a legacy, or makes the subsequent gift a *substitution* in the place of the legacy, or treats the gift as an *advancement* out of the testator's estate. [1 Am. & Eng. Ency. of Law (2 Ed.),

619.]    The terms "satisfaction" or "substitution" require *consent* on the part of the donee or legatee.   [2 Pom. Eq. Jur. (4 Ed.), sec. 524, pp. 996-7; 1 Am. & Eng. Ency. of Law (2 Ed.), 611; Fisher v. Keithley, 142 Mo. 244, 254-5.]    There was no consent found in this case. And leaving the element of consent out of view, we think that appellant's theory may be more accurately stated to be that the subsequent gift of the land to each of said three children was a *satisfaction* of the legacy by way of an *advancement* made to such child in the lifetime of the testator.    Indeed, this is what the claim amounts to whether we call it by the name of ademption, satisfaction, substitution or what not.   In the very nature of things, in order to uphold appellant's theory, the gift of the land must be regarded as a satisfaction of the legacy by a portion or an advancement.   [2 Pom. Eq. Jur. (4 Ed.), sec. 553, p. 1021.]    And it is on this theory that appellants rely upon the equitable presumption that a parent, or person *in loco parentis*, does not intend giving a double portion to a child.   But our statute in reference to Advancements, section 337, Revised Statutes 1909, does not apply where there is a will, but applies only in cases of intestacy.   [Turpin v. Turpin, 88 Mo. 339, 340; Estate of Wm. G. Williams, 62 Mo. App. 339, 348-9.]    And even as to such equitable presumption, it has been the general rule, enforced by the American courts, that the legacy and the subsequent portion, or advancement must be *ejusdem generis.*   [2d Pom. Eq. Jur. (4 Ed.), sec. 560, p. 1040.]

With reference to the admissibility of extrinsic evidence to show testator's intention, there seems to be some conflict among the courts of various jurisdictions. [2 Pom. on Eq. Jur. (4 Ed.), sec. 569, p. 1057.]    And it would seem to be a question affected largely by the effect which the courts of different jurisdictions have given to their own statutes in relation to wills and the due regard to be paid to them, and the Statute of Frauds.   Before dealing with the position our Missouri courts have taken, it may be well to observe that, as hereinbefore shown, the subsequent benefit herein relied upon by appellants

to adeem or satisfy the legacy, was a deed which not only had to be in writing but it was a writing which is *entirely silent* as to the grantor's intention in giving it. And, where no equitable presumption of satisfaction arises, the rule is that extrinsic evidence cannot be admitted to reveal the intention. [2 Pom. Eq. Jur. (4 Ed.), sec. 573, p. 1066.] We do not understand that, under our statutes and the decisions giving them scope and effect, any presumption can arise that the grantor, *at the time he made the deeds,* intended that his children should receive an equal portion of his estate. If he had had such intention only a word or a line inserted in the deeds would have been sufficient to express it. And it would seem that to construe his subsequent gift as an ademption, satisfaction, or substitution, of the legacy provided in the will is not only to change the written deeds by adding thereto, by parol, a clause which the grantor did not see fit to put in them, but also to make a new will or revoke a portion of the old will, neither of which the testator did.

Our statutes, section 583, Revised Statutes, 1909, requires courts to have due regard to the directions in a will and the true intent of the testator and, section 538, Revised Statutes 1909, provides that, with certain exceptions not pertinent here, "no will nor any part thereof, shall be revoked, except by a subsequent will, in writing, or by burning, cancelling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction."

Now, of course, there is such a thing as a revocation of the will, outside of the above method, but that is where the legacy is *specific* and the testator disposes of it so that the will can no longer operate on it; or where the testator disposes of all his property leaving the will nothing upon which to operate. In a sense, this is a revocation outside of the statute. [Cozzens v. Jamison, 12 Mo. App. 452, 458.] But there is nothing of this kind in this case. Here the legacy was general and the subsequent gift was of a different kind and character. Furthermore, the will was left with a large sum, between

five and six thousand dollars, on which to operate. So that, if the subsequent gift of the land should be held to adeem or take the legacy out of the will, then it would seem that such would be a revocation of that part of the will in defiance of the statute. It was held in Fisher v. Keithley, 142 Mo. 244, 252, that the Statute of Frauds and the statutes in reference to wills and their revocation have a direct and controlling effect upon the question of ademption, satisfaction or substitution, and while the facts in that case were somewhat different and related to a devise instead of a bequest, we think the principles annunciated are applicable here.

Holding this view of the case, we think the judgment of the trial court should be affirmed. It is so ordered. All concur.