In re ESTATE OF John E. SCOTT, Deceased.

John E. SCOTT, Jr., Appellant (Executor under Will and Beneficiary),

v.

Richard A. TOBIN, Special Administrator of the Estate of John E. Scott, Deceased, Appellee (Petitioner),

Eulah Ann Grieve, Appellee (Beneficiary).

No. 5598.

Supreme Court of Wyoming.

April 1, 1982.

Rehearing Denied May 6, 1982.

Harry E. Leimback, Casper, signed the brief and appeared in oral argument on behalf of appellant. Of counsel, John A. Criswell, of Criswell, Patterson, McNamara, Myles & Bell, Englewood, Colo.

E. L. McCrary, Casper, signed the brief and appeared in oral argument on behalf of appellee Tobin.

Robert Jerry Hand and J. Patrick Hand, of Hand, Hand & Hand, P. C., Casper, signed the brief and J. Patrick Hand, Casper, appeared in oral argument on behalf of appellee Grieve.

Before RAPER, THOMAS, ROONEY and BROWN, JJ., and ALAN B. JOHNSON, District Judge.

ROONEY, Justice.

This appeal is from orders entered in probate after a hearing on objections to final accountings and petitions for distribution. The only issues presented by appellant, as worded by him, are:

"1. Did the lower court err in striking the Appellee Grieve's ('Grieve's') demand for jury trial, over Scott's [appellant's] objection, and requiring the issues to be tried to the court?

"2. Did the lower court err in refusing to allow the introduction of testimony from various witnesses as to statements made by John E. Scott ('decedent'), which reflected his intent in conveying certain ranch land to Grieve, and, then, in ruling, as a matter of law, that decedent's conveyance to Grieve could not constitute a full or partial ademption of her interest in decedent's estate?" (Bracketed word added.)

We shall also address the issue as to whether or not the probate court had jurisdiction to determine, as it did, the validity of a claim by the estate against appellant.[1]

We affirm the probate court on the two issues presented by appellant, and we reverse it in its assumption of jurisdiction to determine the validity of the alleged claim of the estate against appellant, remanding the matter for correction of the order accordingly.

On March 15, 1966, John E. Scott (hereinafter referred to as testator) died, leaving a will dated July 19, 1963, in which he made a bequest to his wife of sufficient funds to pay the existing mortgage debt on their residence and, then, disposed of his property as follows:

"THIRD: I hereby give, devise and bequeath all my property, both real and personal, to my beloved children, to-wit: John E. Scott, Jr. and Eulah Ann Grieve, in equal shares."

John E. Scott, Jr. (hereinafter referred to as appellant) was designated executor.

On March 17, 1966, appellant petitioned the court for probate of the will, and he was appointed executor on April 12, 1966. On October 20, 1975, appellee Eulah Ann Grieve petitioned the court to order an

---

1.   " * * * The first and fundamental question on every appeal is that of jurisdiction; this question cannot be waived; it is open for consideration by the reviewing court whenever it is raised by any party, or it may be raised by the court of its own motion. [Citation.]" *Gardner v. Walker*, Wyo., 373 P.2d 598, 599 (1962).

accounting, and appellant filed his first accounting on January 28, 1976. He filed his final account and petition for distribution on July 26, 1977. Appellee Grieve then filed objections to the accountings.

The probate court found a number of improprieties in the manner in which appellant administered the estate and in the time taken to do so. On September 22, 1977, the court suspended appellant as executor and appointed appellee Tobin as special administrator. Appellee Tobin made annual accountings and filed a final report and fourth accounting and petition for distribution on November 14, 1980. Appellant filed objections thereto.

After a hearing, the court, in effect, sustained appellee Grieve's objections to the accounting made by appellant and denied appellant's objections to the accounting and petition for distribution made by appellee Tobin.

Additional facts pertinent to the resolution of the separate issues will be set forth in the discussions thereof.

## JURY

Rule 38, W.R.C.P., provides in pertinent part:

"(b) *Demand.*

"(1) By Whom.—Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after service of the last pleading directed to such issue. * * *

\* \* \* \* \* \*

"(3) Jury Fees.—All demands for trial by jury shall be accompanied by a deposit of twelve dollars ($12.00). * * *

\* \* \* \* \* \*

"(d) *Waiver.*—The failure of a party to serve a demand as required by this rule * * * constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

2. In 1957, the procedure was controlled by statute. Section 3-2422, W.C.S.1945, required a written jury demand if a party desired a jury, and it provided that failure to make such de-

■ There were two jury demands made in this case; one by appellee Grieve and one by appellant. Neither was accompanied by the requisite deposit. Thus, the probate court was justified in denying the requests for a jury. *Davidek v. Wyoming Investment Company,* 77 Wyo. 141, 308 P.2d 941 (1957).[2] Accordingly, we need not address the argued questions concerning the timeliness of the demands or concerning which issues were "triable of right by a jury," e.g., accounting matters and ademption.

## ADEMPTION

Although appellant had previously owned some of the stock in Scott Ranches, Inc., all of the stock therein was owned by testator on January 8, 1964. On that date, ranch land owned by the corporation was transferred by it to appellee Grieve. In his first accounting, appellant commented that the accounting did not "dispose of the question of the advancement made by the Testator to Eulah Ann Grieve during his lifetime and after the execution of this Will prior to his death." In his final accounting, appellant recites that the ranch land transferred by the deceased to appellee Grieve on January 8, 1964 had a then net value of $250,000, and he requests that the present value be determined and be offset as an advancement or ademption against appellee Grieve's distributive share of decedent's estate.

Ademption has been defined in several ways:

"Ademption means 'a taking away.' For our purpose if the particular piece of property, real or personal, is not found in the estate and the bequest or devise cannot be fulfilled there is said to be an ademption. * * *" *In Re Bierstedt's Estate,* 254 Iowa 772, 119 N.W.2d 234, 236 (1963).

"* * * Ademption is 'revocation, recalling, or cancellation, of a legacy, according to the apparent intention of the testator, implied by the law from acts done by him in his life, though such acts do not amount to an express revocation of it.' * * *" *Von Steinner v. Sorrell,* 259 Md. 228, 269 A.2d 604, 605 (1970).

mand "accompanied with a deposit of twelve dollars ($12.00) as a jury fee" was deemed a waiver of a trial by jury.

" * * * '[T]he act by which a testator pays in his lifetime to his legatee a general legacy, which by his will he had proposed to give him at death; or else, the act by which a specific legacy has become inoperative on account of the testator having parted with the subject.' [Citations.]" *Wickliffe v. Wickliffe,* 206 Mo. App. 42, 226 S.W. 1035, 1037 (1920).

"It would consequently seem better, instead of attempting to deduce from the cases any all-inclusive definition of the term 'ademption,' to point out that an ademption of a legacy or devise may result from a variety of causes or circumstances, among which may be mentioned, in the case of gifts of specific property, the nonexistence of the property at the death of the testator, or its consumption, loss, disposal by sale, gift, or other alienation, or change in form, during the lifetime of the testator, and, in the case of general or pecuniary legacies, from a gift or advance by the testator to a beneficiary mentioned in his will, made either in cash or property or by the forgiveness of an indebtedness." 80 Am.Jur.2d Wills, § 1702, pp. 756–757.

■ Appellant, here, seeks to be allowed to present evidence of ademption through *advancement or satisfaction.* He desires to show that the transfer of the ranch land was intended by testator to be a gift prior to his death of that which appellee Grieve would otherwise receive through his will. In presenting this issue, appellant does not ask us to rule as a matter of law that appellee Grieve's residual legacy was adeemed. But he contends that he was improperly denied the right to present evidence which would show deceased's intention to have the ranch-land transfer operate as an ademption or satisfaction of the legacy. However, even if the evidence were admitted and even if it established testator's intent to have the transfer be an advancement, it could not so operate unless the transfer were a *gift.* In fact, it was *not* a gift. Thus, we need not consider the propriety of evidence as to deceased's intent.

Additionally, we need not consider the argued questions of whether or not ademption is applicable to that which is to be received under a residual clause, whether or not the failure of the legislature to speak to advancement in testate estates is persuasive,[3] and whether or not a contemporaneous writing is required to make the gift operate as an advancement.

■ Ademption through satisfaction or advancement can operate only if the transfer were a *gift.* If the transfer were otherwise, it would not be chargeable against a legacy as an advancement on it or a satisfaction of it inasmuch as the legacy itself is a gift. There cannot be an "advance" on a gift other than by means of a gift.

In this case, the transfer was a sale and not a gift. Appellant refers to the transfer as a gift, but the probate court found the transfer to have been for a "valuable consideration." There was sufficient evidence to support this finding. The transfer was made by a warranty deed to "Burt W. Grieve and Eulah S. Grieve, as tenants in common." As consideration, the Grieves

---

**3.** The Probate Code speaks of advancements only with reference to *intestate* estates. Section 2–41, W.S.1957 (later § 2–3–105, W.S. 1977), which was in effect when this probate began in 1966, provided:

"Where any of the children of the *intestate* shall have received in his lifetime, any real or personal estate, by way of advancement, and the other heirs desire it to be charged to him, the judge shall cite the parties to appear before him, shall hear proof upon the subject, and shall determine the amount of such advancement or advancements to be thus charged." (Emphasis added.)

The present Probate Code (effective April 1, 1980) provides in pertinent part:

"§ 2–1–102 * * *

*  *  *  *  *  *

"(d) The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this code. It shall also govern further procedure in proceedings in probate then pending unless the court determines its application in particular proceedings or parts thereof is not feasible or will work an injustice, in which event the former procedure shall apply."

"§ 2–4–108 * * *

"(a) If a person dies *intestate,* property which he gave in his lifetime to an heir is treated as an advancement against the latter's share of the estate only if declared in a contemporaneous writing by the decedent or acknowledged in writing by the heir to be an advancement. * * *

*  *  *  *  *  *

"(c) When any heir of the intestate receives in his lifetime any real or personal estate by way of advancement, and the other heirs desire it to be charged to him, the judge shall cite the parties to appear before him, shall hear proof upon the subject, and shall deter-

assumed payment of a $127,200 delinquent real estate mortgage on the property and paid about $7,500 by check and cancellation of an existing debt. Certainly, the half-interest transferred to Burt W. Grieve could not be said to be an advancement to appellee Grieve. And it could not be said to be an advancement to Burt W. Grieve inasmuch as he was not mentioned in the will.

As so often said:

" * * * [O]n appeal the reviewing court assumes that the evidence in favor of the successful party is true, leaves out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the successful party's evidence and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. * * * " *City of Rock Springs v. Police Protective Association*, Wyo., 610 P.2d 975, 980 (1980). See *Madrid v. Norton*, Wyo., 596 P.2d 1108 (1979); and *Johnson v. Aetna Casualty and Surety Company of Hartford, Connecticut*, Wyo., 630 P.2d 514 (1981).

The sale of the ranch lands to appellee Grieve could not be an ademption of the residuary clause of the will since it was a sale and not a gift. The probate court did not err in excluding evidence relative to deceased's intent with reference to the sale. Even if such was error, it was harmless.

### JURISDICTION

The probate court directed that:

" * * * The remainder of the real estate shall be sold, with the indebtedness of Mr. Scott to the estate in the amounts of $210,793.00 with interest at 10% per annum from August 13, 1979, and $3,495.00 with interest at 10% per annum from the date of this judgment, to be added to the net proceeds of the sale with one-half of that amount then to be distributed to Mrs. Grieve and the remainder, if any, to Mr. Scott. In the event of a deficiency, the estate may take judgment against Mr. Scott. * * * "

Appellee Tobin's accountings reflect that when he took over the administration of the estate, he accepted the figure of $83,156 from appellant's final accounting as the amount then due the estate from appellant.

After making several debits and credits to this figure in subsequent accountings as a result of a review of the transactions between appellant and the estate, the resulting amounts were set forth in the court's order.

The original inventory and appraisement did not reflect any debt by appellant to the estate, but the first accounting of appellant, filed January 28, 1976, incorporated by reference a number of unaudited financial statements prepared by Certified Public Accountants Macy, Shamley and Associates, copies of the yearly income tax returns of the estate and a copy of the federal estate tax return. The estate tax return reflected that the amount of $117,706.87 was due the estate from appellant at the time of death of testator.[4] This figure was also listed as an asset of the estate on the financial statement of March 15, 1966. After many debits and credits to appellant's accounts, the amount listed on the most recent financial statement as a debt from appellant to the estate was $83,156—the amount accepted by appellee Tobin as the amount then due.

The probate court had jurisdiction to control and review the management of the estate by the executor and to issue orders requiring him to account for and pay to the estate any estate assets coming into his possession. It had jurisdiction to set off against appellant's entitlement from the estate such amounts as appellant owed the estate as a result of mismanagement or misapplication of estate funds. Such action relates to the administration, settlement and distribution of the estate. But the probate court cannot determine the validity of alleged claims by and against the deceased which are contested as properly included in the estate.

" 'While in this state the district court is the court of general jurisdiction, and the same court has by the Constitution (section 10, art. 5) jurisdiction "of all matters of probate," yet, in the exercise of its probate powers, its jurisdiction is limited and special, and when its acts in probate are without [beyond] the limits of the special jurisdiction conferred, they have no binding effect "even upon those who have invoked its authority." * * * ' " *In Re Stringer's Estate*, 80 Wyo. 426, 345 P.2d 786, 789 (1959), on rehearing being

---

mine the amount of such advancement or advancements to be thus charged." (Emphasis added.)

4. The privilege of using the alternate date was not exercised.

denied for 80 Wyo. 389, 343 P.2d 508 (1959), and quoting from *Church v. Quiner*, 31 Wyo. 222, 226, 227, 224 P. 1073, 1074 (1924). See *In Re Black's Estate*, 30 Wyo. 55, 216 P. 1059 (1923); *Matter of Estate of Frederick*, Wyo., 599 P.2d 550 (1979); and *Matter of Estate of Blaney*, Wyo., 607 P.2d 354 (1980).

Accordingly, the probate court cannot render judgment against a debtor of the deceased on a debt alleged to have been incurred prior to the death. If such debt is not paid, the executor must bring the action for collection in the district court proper. If the action is successful, the proper judgment will issue out of such district court.

In this case, it appears that the setoff against appellant's distributive share began with a figure of $117,706.87 which appears from the record to have possibly been a debt owed by appellant to the testator before his death. If so, and if appellant desires to contest the debt, an opportunity should be afforded him to do so in an action brought against him in district court. Of course, if he acknowledges the claim, agrees to pay it, and does pay it (by accepting the setoff, or otherwise), the matter can be handled within the estate in the same fashion as is any other instance in which estate assets are voluntarily surrendered to the executor or administrator. We gave thought to the proposition that appellant may have agreed to the existence of the debt by listing it on the estate tax return and making credits and debits to that figure in his accountings. However, in his objections to the final report of appellee Tobin, appellant denies the allegations in the report concerning the alleged debt of appellant in the amount of $210,793. In any event, a judgment upon which collection can be made of any amount owed to deceased before his death must be from the district court proper.

We remand the case with directions to the probate court to ascertain the amount, if any, of the allowed $210,793 and $3,495 setoff which represents an alleged claim against appellant that existed before the death of deceased, and to amend its order accordingly, if necessary.

Affirmed in part, reversed in part and remanded.

RAPER, Justice, concurring in part and dissenting in part.

I concur in the court's decision except insofar as it prevents the district court's entering of judgment in this proceeding for any deficiency it finds Scott owes the estate after distribution of available assets.

Maintaining the fictional line drawn between the district court sitting in law and equity and sitting in probate amounts to a pagan worship of the idol of stare decisis. It is a vestige of archaic times. We no longer require separate actions to be filed on the equity side of the district court. The same judge, the same clerk of court, the same courthouse, and the same courtroom all serve the district court in all its functions.

To require a separate action to be filed in order to satisfy precedent as to a matter already tried or which can be tried in a single proceeding is the ultimate in judicial inefficiency. It makes about as much sense as having two benches in the courtroom, one to sit at when handling law and equity cases and another when handling a probate matter, or requiring different colored robes, black when sitting in law and equity, purple when sitting in probate.

I have examined the source of this rule which goes back to *Church v. Quiner*, 31 Wyo. 222, 224 P. 1073 (1924) and *In re Black's Estate*, 30 Wyo. 55, 216 P. 1059 (1923). In the last cited case, there was adopted the language of *In re Strong's Estate*, 119 Cal. 663, 51 P. 1078, an 1898 case, which held that whenever the acts of the court in probate, though a court of general jurisdiction, are without the limits of the special jurisdiction conferred, they are nugatory and have no binding effect even upon those who invoked its authority. The rule is without reason. It would have been simpler to say "the district court has jurisdiction but does not have jurisdiction." Nowhere in the relied upon cases is the reason for such a conclusion stated, nor do I think it is within the spirit of the Wyoming Constitution, Art. 5, § 10:

"The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the pow-

er of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, injunction and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective districts."

I need to see something there which prohibits what the district court has done or will do in this estate matter. The statute, § 2–2–101, W.S.1977, a part of the Wyoming Probate Code recently readopted, but which has been on the books for years, including during the entire period of the administration of the estate we now consider, contains no prohibition that I can see:

"The *district courts* of the state *have exclusive original jurisdiction of all matters* relating to the probate and contest of wills and testaments, the granting of letters testamentary and of administration, and the settlement and distribution of decedents' estates. *The court granting the letters has exclusive jurisdiction of all matters touching* the settlement and distribution of the estates for which letters have been granted."

"All matters" and "all matters touching the settlement and distribution of the estates for which letters have been granted" seem pretty all-inclusive to me. Under that language, I believe a complete disposition can and should be justified.

When the new Wyoming Probate Code was adopted, one of its purposes was to "[p]romote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors." Section 2–1–102(a)(iii), W.S.1977. That is good policy any time. We can start by throwing out an ancient concept no longer valid.

I would have affirmed in all respects and permitted the district judge to make and enter any judgment in the probate proceeding necessary to do complete justice without the folderol of a separate proceeding.

### ORDER DENYING PETITION FOR REHEARING

Appellant having filed a Petition for Rehearing in this matter, and the same

having been carefully considered by the Court; and it being noted that as one of the grounds for rehearing, appellant advised that the deposit had been paid by appellee Grieve at the time she made a jury demand in connection with her objections to the final account and petition for distribution of appellant. Although the record did not so reflect, appellant has furnished a copy of the receipt for payment. Had the record reflected such payment, the result would have been the same. Appellant recognized that there is generally no right to a jury on accounting issues. *In Re Kiesel's Estate*, 35 Wyo. 300, 249 P. 81 (1926). However, he argued that such right existed with reference to: (1) the ademption issue, and (2) any liability on the part of appellant to the estate which arose prior to his appointment as executor. The second argument was made immaterial by our holding relative to the impropriety of determining in the probate proceedings appellant's liability to the estate which arose prior to his appointment as executor. With reference to the ademption issue, the trial court made its determination that there would not be a jury trial on January 17, 1979. At the time, § 2–6–403, W.S.1977, was in effect. It provided in pertinent part:

"All questions as to advancement made, or alleged to have been made, by the decedent to his heirs, may be heard and determined by the court or judge * * *."

The section was repealed by the Probate Code which became effective April 1, 1980. Ch. 142, § 4, S.L. of Wyoming 1979. After the case was assigned to another judge, the determination that there would not be a jury trial was reaffirmed on September 10, 1980. The second judge undoubtedly had the foregoing quotation in mind together with the following provision of the Probate Code which became effective April 1, 1980:

" * * * The procedure herein prescribed shall * * * govern further procedure in proceedings in probate then pending, except to the extent that, in the opinion of the court, its application in particular proceedings or parts thereof would not be feasible or would work injustice, in which event the former procedure shall apply." Ch. 142, § 6, S.L. of Wyoming 1979.