In the Matter of the ESTATE OF John E. SCOTT, Deceased.

John E. SCOTT, Jr., Appellant (Executor),

v.

Richard A. TOBIN, Special Administrator of the Estate of John E. Scott, Deceased, Appellee (Petitioner),

and

Eulah Ann Grieve, Appellee (Beneficiary).

No. 5765.

Supreme Court of Wyoming.

Jan. 28, 1983.

Harry E. Leimback, Casper, for appellant.

R. Jerry Hand and J. Patrick Hand (argued) of Hand, Hand & Hand, P.C., Casper, and E.L. McCrary, Casper, on brief, for appellees.

Before ROONEY, C.J.,* and RAPER, THOMAS and BROWN, JJ., and JOHNSON, District Judge.

ROONEY, Chief Justice.

This case is before us a second time with the issue of whether or not the computations of the probate court were in accordance with the directions set forth in our previous opinion. *In Re Estate of Scott,* Wyo., 642 P.2d 1287 (1982). Specifically, we are requested to resolve the questions as to whether or not the probate court erred: (1) in its determination that appellant John E. Scott, Jr.'s mismanagement of, and misappropriation from, the estate amounted to $127,637.00; and (2) in directing the special administrator to proceed in district court against appellant for a debt incurred before the death of the deceased in the amount of $83,156.00 rather than $117,706.87.

We reverse inasmuch as we find the probate court erred in both respects, and we remand for remaining probate proceedings.

The issue presented is whether or not in remanding the case when it was first before us, we accepted that set forth in the special administrator's report and the accompanying accountings of Leo C. Riley, C.P.A., to the effect that:

"* * * it is next to impossible to segregate which expenses applied to estate versus J.E. Scott, Jr."

and

"* * * Due to the chaotic state of the records and the long period of time involved, we do not believe that a complete and accurate accounting in the usual sense is possible. Also, we do not belive [sic] that the records could be adequately reconstructed."

Accepting that which the accountings were able to do, the probate court found that "the accountings filed by the Special Administrator and Mr. Leo Riley are accepted, proven and valid." Accordingly, we recognized in the first opinion in this case, 642 P.2d at 1292, that the figure of $117,706.87 could have "possibly been a debt owed by appellant to the testator before his death," and that the figure of $210,793.00 (plus $3,495.00 setoff)[1] represents the sum of: (1) that resulting from mismanagement or misappropriation; and (2) the "alleged" amount owed at the time of death. We recognized further that the probate court might desire to make adjustments pursuant to comments and notes to the accountings such as:

"If credit were given to Mr. Scott for property taxes and fees * * * the balance due from Mr. Scott would be reduced by $58,431 * * *."

"Accounting, legal and executor's fees totaling $13,176 paid by J.E. Scott, Jr. and claimed in the final accounting through February 28, 1977 are not shown as credits in our report because we could not find prior court approval for the expenditures. Should the Special Administrator, or the court, subsequently approve these fees, then the amount due the Estate from Mr. J.E. Scott, Jr. should be reduced by a like amount."

The order here appealed from reflects the refusal of the probate court to make such adjustments.

The accountings filed by the special administrator and Leo C. Riley (and found by the probate court to be "proven and valid") used the figure of $83,156.00 as the debt of appellant to the estate as a starting point of Mr. Riley's accountings. However, this figure was accepted in the Riley accountings "per final estate accountings" of appellant before he was removed as executor. The figure came from the final financial statement prepared by Macy, Shamley and Associates, C.P.A.s, on behalf of appellant be-

* Became Chief Justice on January 1, 1983.

1. The sum of $3,495.00 represents the value of estate furniture, fixtures, cars and trucks listed but not accounted for by appellant. The figure was treated separately from that resulting from other mismanagement or misappropriation.

fore he was removed as executor. In turn, the figure in the financial statements prepared by Macy, Shamley and Associates resulted from debits and credits[2] to the original "alleged" death-debt figure of $117,-706.87. The issue which may arise if the special administrator opts to bring an action in the district court to collect such debt is whether or not this "alleged" death-debt figure is a true amount of the death debt.

Whatever fluctuations[3] may have resulted in estate assets due to mismanagement of, or misappropriation by, appellant are not to be charged against or credited to the before-death debt. Rather, the final debit balance resulting from such fluctuations is to be set off by the probate court against appellant's inheritance from the estate. Since the $210,793.00 is the amount reached by adding the misappropriation or mismanagement debit to the amount of the "alleged" pre-death debt owed by appellant, and since the "alleged" pre-death debt is $117,706.87, the difference of $93,086.13 is the debit amount resulting from appellant's mismanagement or misappropriation.

Accordingly, the amount to be charged against appellant's inheritance is $93,086.13 with interest at 10% per annum from August 13, 1979 and $3,495.00 with interest at 10% per annum from August 19, 1981, and if the charge exceeds the inheritance, the estate may take judgment for the deficiency. The estate is authorized to institute an action against appellant in the district court to collect the debt owed by appellant to the deceased at the time of his death and alleged to be $117,706.87. The orders and amended orders of the probate court pertaining thereto are modified accordingly.

### ADDENDUM

In response to the dissenting part of Justice Raper's opinion, in which he maintains

the position taken by him when the case was first before us, I note that the constitutional provision referred to by him to buttress his position, i.e. Art. 5, § 10, Wyoming Constitution, was considered in *Church v. Quiner,* 31 Wyo. 222, 224 P. 1073 (1924), and *In Re Stringer's Estate,* 80 Wyo. 426, 345 P.2d 786 (1959), when the separate probate function of the district court was recognized years ago. The rationale there set forth is still valid today.

In *Gaunt v. Kansas University Endowment Association of Lawrence, Kansas,* Wyo., 379 P.2d 825 (1963), we noted that the district court is referred to in the Constitution in an inclusive sense, specifically referring to Art. 5, § 10, among others. We said at page 828:

> "As used in the constitutional and statutory provisions to which we have just referred, it is apparent the term 'district court' is used in a broad or inclusive sense as if there were one district court in a given judicial district for several counties, *and as if there were one district court in a given county for the several jurisdictions such as civil, criminal and probate."* (Emphasis added.)

Reversed and remanded for remaining probate proceedings.

RAPER, Justice, concurring in part and dissenting in part.

I concur in the $93,086.13 computation.

I have heretofore dissented from the decision of this court by which it creates a probate court separate from the district court and directs that a separate action be filed in the district court to recover money from the executor as the only way to enforce collection of a debt arising prior to the death of the decedent. See my concurring and dissenting opinion in *In Re Estate of*

---

**2.** The debits and credits to the original $117,-706.87 by Macy, Shamley and Associates in arriving at the figure of $83,156.00 were similar to those later made by Riley accounting.

**3.** The Riley accountings reflected the fluctuations to have resulted from such debits as those resulting from improper disbursement of prop-

erty taxes and assessments, legal fees, executor's fee, utilities, sewer plant, car, withdrawal of funds, etc., and from such credits as payments of state and federal taxes, of notes of the estate, of property taxes, of utilities and from deposits of personal assets into the estate, etc., —in short intermingling of personal and estate funds and accounts.

*Scott,* Wyo., 642 P.2d 1287 (1982). I have also strongly objected to the concept of a separate probate court in *Matter of Estate of Harrington,* Wyo., 648 P.2d 556 (1982). I continue to dissent.

To my reasons heretofore voiced, I add constitutional support. The Wyoming Constitution has, by two sections, abolished the probate court and transferred all of its functions to the district court:

Section 10, Art. 5:

*"The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate* and insolvency and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, injunction and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective districts."

Section 17, Art. 21:

"Whenever this constitution shall go into effect, records and papers and proceedings of the probate court in each county, and all causes and matters of administration and other matters pending therein, shall pass into the jurisdiction and possession of the district court of the same county, and the said district court shall proceed to final decree or judgment order or other determination in the said several matters and causes, as the said probate court might have done if this constitution had not been adopted."

The majority is living in the past, ninety-three years behind the times. There is no probate court. The parties to this proceeding are already in the district court, which should proceed to dispose of all claims without the folderol of a useless separate action. As Justice Black once said in a different setting, "[w]hen precedent and precedent alone is all the argument that can be made to support a court-fashioned rule, it is time for the rule's creator to destroy it." *Francis v. Southern Pacific Co.,* 333 U.S. 445, 471, 68 S.Ct. 611, 623, 92 L.Ed. 798 (1948) (dissenting opinion). This is the way I view the majority's citing of *Gaunt v. Kansas University Endowment Ass'n of Lawrence, Kansas,* Wyo., 379 P.2d 825 (1963); *In Re Stringer's Estate,* 80 Wyo. 426, 345 P.2d 786 (1959); and *Church v. Quiner,* 31 Wyo. 222, 224 P. 1073 (1924).