In the Matter of the ESTATE of Donald D. HARRINGTON, Deceased.

Sybil Buckingham HARRINGTON, Appellant (Objector),

v.

Leon L. HOYT, Jr., and Hughes Seewald, Executors of the Estate of Donald D. Harrington, Deceased, Appellees (Petitioners).

No. 5606.

Supreme Court of Wyoming.

July 22, 1982.

Oscar A. Hall, Rawlins, for appellant.

K. W. Keldsen, Rawlins, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

THOMAS, Justice.

The issue to be dealt with in this case is whether in Wyoming the probate court has jurisdiction to adjudicate title to real property which is included among the assets of an estate. The specific claim presented is that of a surviving spouse to have set over to her one-half of certain oil and gas interests by virtue of the application of the community property laws of the State of Texas, which is the place of domicile of the decedent. The district court, sitting in probate, denied the claim, holding that the real property situated in Wyoming must pass in accordance with Wyoming law; and that the community property laws of the State of Texas did not govern the disposition of such property. We shall hold that the probate court is without jurisdiction to adjudicate title to such property, and for that reason only we shall affirm the decree of final distribution of the estate from which this appeal is taken.

A Petition for Ancillary Probate of Will was filed in the District Court of the Second Judicial District in Carbon County by the executors of the estate of Donald D. Harrington. The Wyoming assets for which probate was sought are oil and gas interests which were appraised at a value of $1,089,030.00. In the First and Final Account and Petition for Distribution of the Estate the executor represented and petitioned:

"That under the terms of the Last Will and Testament of the decedent, all of the above described property in said estate be set over and distributed unto THE DON & SYBIL HARRINGTON FOUNDATION, a non-profit Texas corporation."

The surviving spouse, Sybil Buckingham Harrington, then filed Objections to First and Final Account and Petition for Distribution of Estate in which she asserted that the oil and gas and other mineral interests were acquired by the decedent with community property funds and that one-half or 50 percent of the assets should be set over and conveyed to her. Her prayer for relief reads as follows:

"WHEREFORE Sybil Buckingham Harrington, surviving spouse of decedent and Objector herein, prays that one-half (½) of the assets of this estate be set over to her, an interested party, wife and surviving spouse of the decedent herein, and for such further and different relief as is proper in the premises. And Objector further prays that her objections to the said First and Final Account and Petition for Distribution of said Estate be set down for hearing at a time and place pursuant to law."

This pleading was served upon counsel for the executors and others listed as heirs, devisees and legatees in the Petition for Ancillary Probate of Will by ordinary mail. The record does not disclose actual notice to the heirs, devisees, and legatees of the ancillary probate nor of the objections.

A stipulation of facts then was filed in which the executors and the objector agreed to the following statement of facts:

"Donald D. Harrington died on April 27, 1974. At the time of his death, he was a resident of Potter County, Texas, and left an estate in the Counties of Carbon and Campbell, Wyoming. His estate in these counties consisted of royalty mineral interests having an appraised value of $1,089,030.00, which interests are more

particularly set forth in the inventory and appraisement filed herein. His sole surviving heir was his widow, Sybil Buckingham Harrington, of Amarillo, Texas. Mr. Harrington left a Last Will and Testament, which, in addition to a number of specific bequests, gave, under Section Five thereof, to his wife an amount equal to the maximum 'marital deduction allowed his estate under the Internal Revenue Code,' which amount was satisfied out of other properties in the estate in the probate thereof in the County Court, Potter County, Texas. All of the specific bequests and the marital deduction bequest to the surviving spouse being satisfied out of assets outside of the State of Wyoming, the assets in the State of Wyoming are subject to distribution under the residuary clause, Section XII, of the Last Will and Testament. Under this residuary clause, the residuary [sic] of the estate was given to The Don & Sybil Harrington Foundation, a nonprofit Texas corporation, organized and operated exclusively for religious, charitable and educational purposes. The Last Will and Testament of said decedent was duly admitted to probate in the Probate Court of Potter County, Texas, and upon petition for ancillary probate of said Will, it was admitted to probate in the District Court of Carbon County, Wyoming, on January 22, 1975. After publication of notice of final settlement, the Executors filed a first and final account and petition for distribution of the estate herein on November 28, 1980. On December 8, 1980, Sybil Buckingham Harrington, the surviving spouse of Donald D. Harrington, Deceased, filed herein her objections to first and final account and petition for distribution of estate, claiming that all of the assets of the estate situated in the State of Wyoming were acquired with community property funds and, therefore, as the owner of one-half of the community property funds the surviving widow is entitled to one-half of the assets of said estate situated in the State of Wyoming.

"The title to all of said mineral interests are in the name of the decedent, Donald D. Harrington. The Executors admit and it can be agreed as a matter of fact that all of the assets were acquired with community property funds of the decedent and the surviving spouse.

"The Wyoming Inheritance Tax Department and the Internal Revenue Service have recognized the community property interests of Mrs. Harrington and accepted one-half of the appraised value for state inheritance and federal estate tax purposes."

After receiving memoranda from the parties the court heard argument, wrote an opinion letter to the parties, and then entered its Decree of Final Distribution of Estate. In the Decree of Final Distribution of Estate the district court, sitting as the probate court, dealt with this issue as follows:

"11. That on December 8, 1980, Sybil Buckingham Harrington, widow of the decedent, filed herein objections to the first and final account and petition for distribution of estate, claiming that one-half of the assets of said estate should be set over to her for the reason that the same were acquired with community property funds. That pursuant to notice, hearing was held by the Court, K. W. Keldsen, attorney for the Estate, of Rawlins, Wyoming, appearing on behalf of the Executors, and Oscar A. Hall, Attorney at Law, Rawlins, Wyoming, appearing on behalf of Sybil Buckingham Harrington, Objector, and the parties having filed herein a Stipulation of Facts and having filed Memorandum of Authorities herein, and the Court being well advised in the premises, finds that the community property laws of the State of Texas do not govern the disposition of the residue of the Testator's estate to property situated in Wyoming which was acquired by community property funds and that the Estate assets of Donald D. Harrington, Deceased, must pass under the Will in accordance with Wyoming law and accordingly, unto The Don & Sybil Harrington Foundation, a non-profit Texas corporation."

The court ordered distribution to The Don & Sybil Harrington Foundation, a non-profit Texas Corporation. This appeal followed.

The appellant in her brief stated the issues as follows:

"1. Whether a decedent's widow is entitled to one-half of all of the Wyoming mineral interests in the decedent's name where those interests were acquired with community funds.

"2. Whether the decedent intended to leave only one-half of the mineral interests to the residuary beneficiary under his will."

As the dissenting opinion of Justice Raper illustrates, the first issue indeed is an intriguing one. It captures the essence of the legal problem which concerns the title to the mineral interests located in Wyoming, and presents the question as to whether those mineral interests are owned by the estate of Donald D. Harrington or whether one-half are owned by the surviving spouse. Because the probate court was without jurisdiction to adjudicate this question, we do not treat in the opinion of the court with either of the issues stated by the appellant.

■ It is recognized that the question of jurisdiction was not presented in argument to this court, nor was it presented in the district court. Nevertheless the rule is well established that the question of jurisdiction can never be waived, and it always is open to consideration by a reviewing court upon its own motion. *Williams v. Public Service Commission of Wyoming*, Wyo., 626 P.2d 564 (1981); *Hayes v. State*, Wyo., 599 P.2d 569 (1979); *Merritt v. Merritt*, Wyo., 586 P.2d 550 (1978); *Pritchard v. State Division of Vocational Rehabilitation, Department of Health and Social Services*, Wyo., 540 P.2d 523 (1975); *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Niezwaag*, Wyo., 444 P.2d 327 (1968); and *Gardner v. Walker*, Wyo., 373 P.2d 598 (1962).

■ We have recognized that the issue sought to be resolved by these parties is one over which the probate court has no jurisdiction. In *Estate of Blaney*, Wyo., 607 P.2d 354 (1980), this court quoted from the controlling rule stated in 1 Bancroft's Probate Practice, § 27, pp. 70–71 (2d Ed.1950), to the effect that title to property as between the estate, the heirs or devisees and a third person may not be tried in probate proceedings. See also *Leach v. Misters*, 13 Wyo. 239, 79 P. 28 (1905). In *Estate of Blaney*, supra, this court expressly reaffirmed the jurisdictional limitations upon the probate court as recognized in *Estate of Frederick*, Wyo., 599 P.2d 550 (1979); *Estate of Stringer*, 80 Wyo. 426, 345 P.2d 786 (1959); and *Church v. Quiner*, 31 Wyo. 222, 224 P. 1073 (1924).

*Church v. Quiner*, supra, involved a contest between the holders of two assignments of the interest of a residuary legatee in the estate. A bank held a partial assignment of the interest of the residuary legatee, and the other assignee was the legatee's wife. The executor paid the bank on the basis of its assignment, and he then sought a credit for that amount as a charge against the distributive share of the legatee in his final report and petition for distribution. The legatee's wife filed objections to this report, urging that the assignment to her was prior to and superior to the one made to the bank. After hearing, the probate court overruled the objections of the wife, and entered an order finding that the assignment to the bank was entitled to priority and allowing the executor to deduct the amount paid to the bank from the distributive share of the residuary legatee. Upon appeal this court held that "the probate jurisdiction of the district court does not include the power to determine the priority of conflicting assignments of a legatee's interest in the estate." *Church v. Quiner*, supra, 31 Wyo. at 226, 224 P. 1073.

In discussing the underlying rationale behind the separation of the probate jurisdiction and the general jurisdiction of the district court, this court said:

"* * * Where, as in Wyoming, the same court that has jurisdiction in probate has also general jurisdiction, the separation of its powers exercised in probate from those exercised in actions at law or in equity might at first seem the result of a

merely technical rule of no practical importance; but when it is borne in mind that the court in probate having jurisdiction of the estate can for many purposes acquire jurisdiction of the persons interested in the estate without any actual notice to them, the substantial nature of the distinction, as well as the importance of maintaining it in practice, becomes clear. We deem it unnecessary to refer to other reasons for confining the probate jurisdiction to 'matters of probate,' as defined by law." *Church v. Quiner*, supra, 31 Wyo. at 227, 224 P. 1073.

In the later case of Estate of Stringer, supra, this court, following *Church v. Quiner*, supra, held that those claiming contractual rights arising out of the execution of reciprocal wills must assert those claims in a separate civil suit apart from the probate proceeding. Following the general rule recognizing separation of probate jurisdiction from the general powers of the district court, the court stated:

" * * * [I]n proceedings for the probate of an instrument as the last will and testament of the deceased only matters affecting the validity and subsistence of the will should be considered, and any right or claim against the estate arising through contract must be asserted in an independent action against the administrator or the executor of the estate as the case may be." *Estate of Stringer*, supra, 345 P.2d at 789.

This recognition of the separation of probate jurisdiction from the general jurisdiction of the district court is continued in *Estate of Frederick*, supra. There the parties sought to litigate in both the probate and, simultaneously, the district court the question of whether the holder of a lease option to purchase a filling station, which was contained in a lease, was entitled to specific performance against the estate. Recognizing that a statutory procedure did exist for the bringing of an action for specific performance to convey real property in the probate court, this court refused to give any effect to the ruling made in the separate civil action, treating the case as arising solely from the probate proceeding. We there held that if specific performance pursuant to the statutory procedure were denied by the probate court there would be no inhibition against bringing a separate action in a civil suit in the district court to obtain relief.

In the more recent case of the Estate of Blaney, supra, this court reversed a dismissal of a replevin action by the district court which had ruled that the proper place to contest the title to property included in the estate was in the probate proceedings. Relying upon our prior cases and 1 Bancroft's Probate Practice, § 27, pp. 70–71 (2d Ed. 1950), we held that a replevin action could be maintained because the probate court did not have jurisdiction to try the title to property as between the estate, the heirs or devisees, and third parties.

The rule establishing the separation of probate and general jurisdiction applies with equal clarity in this case. The surviving spouse here is seeking not a clarification of her rights in the estate, but rather her complaint is that the property included in the estate is her separate property by virtue of the application of the community property laws of the State of Texas. Her claim is no different in substance than that of any other person who desires to contest the ownership of property against the estate.

The Supreme Court of New Mexico has had occasion to consider a substantially identical problem. In *Will of Conley*, 58 N.M. 771, 276 P.2d 906 (1954), the New Mexico court held that the probate court had no jurisdiction to determine the claim of a surviving widow to ownership of an undivided one-half interest in either real or personal property by virtue of community property laws. Treating her as a stranger to the estate, the court concluded that:

" * * * [T]he probate court, and by the same token the district court sitting in matters of probate, lacked jurisdiction to enter the decree it did insofar as such decree affects the title and the ownership of the property in question. * * * " *Will of Conley*, supra, 276 P.2d at 910.

The rationale of the New Mexico court for treating the widow as coming within those principles applicable to claims of ownership by persons not involved in the probate proceeding was that her claim to one-half of the property involved in the estate was not the claim of an *heir* in administration, but rather, a claim arising by virtue of the community property rules which did constitute her the *owner* of an undivided one-half interest in all community property. This is no different from the position of the surviving spouse in the instant case.

The district court, of course, disposed of Mrs. Harrington's claim by treating with it on the merits. We can, however, affirm the district court on any proper ground disclosed by the record. *Agar v. Kysar*, Wyo., 628 P.2d 1350 (1981); *Wightman v. American National Bank of Riverton*, Wyo., 610 P.2d 1001 (1980); and cases therein cited. Because the probate court was without jurisdiction to treat with title to this property, this disposition is not one which invokes the principle of res judicata. It well may be that in a proper action in the district court the surviving spouse will be able to persuade the court that title to a one-half interest in this real property should be quieted in her or that a constructive trust should be imposed upon it for her benefit.

The judgment of the probate court in its Decree of Final Distribution of Estate is affirmed.

RAPER, Justice, dissenting.

I believe we should get down to business and decide the issues as they ought to be decided rather than encumbering the judicial system and litigants with an unnecessary and improper duplication of effort and expense. For that reason I must dissent.

Because of the length of this dissenting opinion, I will at the outset summarize the reasons I believe the majority opinion reaches an erroneous result:

Part I. The rule espoused by the majority is not founded on any applicable Wyoming authority or any rule existing elsewhere. The parties to the "dispute" in this case are heirs, or devisees or legatees or both and not strangers, and all differences between them are settled in the probate matter. The rule applied by the majority, that a claimant must go into a court other than probate, has, before now, only been applicable when one of the parties to the dispute was a stranger to the estate, even when there has been a difference between the district court and the district court sitting in probate. As a result, when a dispute has occurred between parties to the probate proceedings, the probate court has been allowed to settle the matter.

Part II. I also am convinced that the distinction between the district court sitting in probate and sitting as a district court is pure fiction, impractical, unreasonable, judicially inefficient, and should not be used as a reason to affirm the district court. See my dissent in *Estate of Scott*, Wyo., 642 P.2d 1287, 1292 (1982), which in this dissent I enlarge and fortify. It is said that repetition is a useful tool in teaching.

Part III. I must also observe that for the type of case this court now has before it, the legislature has made specific provision in the Wyoming Probate Code for its disposition by providing for a choice of law as to the meaning and legal effect to be given a will executed in another state. Section 2–6–104, W.S.1977. The legislative intent is that this court recognize the community property law of Texas in the administration of a Texas testator's estate in foreign probate. We should give effect to that intent. Hopefully I may get the attention of someone interested in judicial efficiency having influence with the legislature, in order to eradicate the judicial oddity which results under the approach of the majority opinion.

PART I

I will open this part by agreeing with Justice Brown that by affirming the district court, the majority is permitting that court to try title in a probate file inconsistent with its theme that a district court does not have jurisdiction to do so.

The majority misapplies *Estate of Blaney*, Wyo., 607 P.2d 354, 356 (1980) in its reference to the controlling rule:

"The controlling rule is stated in 1 Bancroft's Probate Practice 2d ed., § 27, pp. 70–71 (1950):

" ' * * * It is thoroughly established that in probate proceedings title to property as between the estate, the heirs or devisees, *and a third person* [2] may not be tried. Thus a superior court, sitting in probate, has no jurisdiction or authority to determine disputed titles to the property of the estate of a deceased person. The rule extends to disputes as to the ownership of personalty as well as to title to realty. * * * ' " (Footnote appearing was added by author of *Blaney* opinion. Emphasis added.)

It is important that the footnote be set out: "[2] The rule is not applicable where third persons are not involved, e.g., administrator claiming in his own right. *Wayman v. Alanko*, Wyo., 351 P.2d 100 (1960); *Security-First Nat. Bank of Los Angeles v. King*, 46 Wyo. 59, 23 P.2d 851 (1933)." [1]

In *Estate of Blaney* a third person (not an heir, devisee or legatee, or the administrator acting for the estate) was claiming title to a gun collection as the result of a transaction with the decedent before death.

*Leach v. Misters*, 13 Wyo. 239, 79 P. 28 (1905), cited by the majority, is an unusual sort of case but has no bearing on the question of jurisdiction. In Leach, the daughter of decedent by a previous wife filed a petition for appointment of an administrator and requested that decedent's surviving spouse be required to account for personal property which was to become petitioner's upon her reaching majority. The district court, after a hearing on the petition, rendered judgment:

" * * * 'It is hereby adjudged, ordered, and decreed that Sarah E. Leach pay to Lettie M. Misters five hundred dollars on or before January 8, 1903, or show cause why she should not be punished for con-

tempt of court, to which ruling the said Sarah E. Leach excepts.' * * * " 79 P. at 29.

All the supreme court held in that case was that the only questions presented were "whether or not an administrator should be appointed, and, if so, who should be so appointed," and that "[t]he question of the right or title to the property * * * was not and could not be put in issue in the pending proceeding * * *." There was no issue involving the distinction between the district court and the probate court.

In *Estate of Frederick*, Wyo., 599 P.2d 550 (1979), cited by the majority, a stranger to the estate made a claim in the estate with respect to a service station lease he had with decedent. This court construed the proceedings to be one for a statutory petition for a conveyance [2] and a probate matter. The separation of district court and probate court was mentioned but was not held dispositive. The appeal was disposed of on its merits.

In *Estate of Stringer*, 80 Wyo. 389, 343 P.2d 508 (1959), on rehearing, 80 Wyo. 426, 345 P.2d 786, the claim made by a stranger was premised upon a contract arising out of an agreement to will property between decedent and a former wife who was deceased. The stranger argued that under the agreement between decedent and the former wife, a later will leaving decedent's property to the survivors of decedent including decedent's wife at the time of death should be held void. The court held that not to be a matter to be decided in the probate court.

In *Church v. Quiner*, 31 Wyo. 222, 224 P. 1073 (1924), Henry Church died testate. Almon Church, son of decedent and a residuary legatee, made two conflicting written assignments of his interest in the estate, one to his wife and another to the Manderson State Bank. The executor paid the

---

1. I note that Section XIII of the Harrington will names the appellant as an executor of the will, though she does not join with the other two executors in the petition for ancillary probate. Her absence on the petition is not explained. I would say that arguably she falls within the

rule of *Wayman v. Alanko*, Wyo., 351 P.2d 100 (1960).

2. This was decided under § 2–5–804, W.S.1977, formerly § 2–169, W.S.1957, now § 2–7–604, W.S.1977, 1980 Replacement.

bank. The wife of the assigning legatee objected to the final report. The district court handled the dispute in the probate matter. This court reversed. Once again it was a stranger to the probate asserting a claim to estate assets. This court in Church decided the very narrow question of whether the court acting in probate can decide a dispute involving the validity of disputed assignments of a distributive share of an heir or legatee. This court ordered modification of the order of the district court so that the legatee's share could be distributed to him subject to the assignments. This would require the legatee and his assignees to fight it out in a separate proceeding.

The court in *Church v. Quiner* cited *In Re Black's Estate*, 30 Wyo. 55, 216 P. 1059, 1063 (1923) for only one very short statement:

> " * * * [t]hat whenever the acts of the court in probate, though a court of general jurisdiction, are without the limits of the special jurisdiction conferred, they are nugatory, and have no binding effect, 'even upon those who have invoked its authority.' "

Actually the only question was whether a petition for determination of heirship was filed at the right time in the estate proceeding. The court remanded the case to the district court to take more evidence to assure more positively that the petitioners were or were not heirs of decedent, so it apparently held the filing proper. There is no gold to mine in this case that is helpful to our disposition; it simply does not support the majority.

Also, the majority has failed to explain that in *Will of Conley*, 58 N.M. 771, 276 P.2d 906 (1954), the only case it cites as authority from the law of other jurisdictions, there was a New Mexico constitutional provision, Art. VI, § 23, which at that time created a *separate* probate court (not the district court) with limited powers as follows:

> "A probate court is hereby established for each county, which shall be a court of record, and, until otherwise provided by law, shall have the same jurisdiction as is now exercised by the probate courts of the Territory of New Mexico. The legislature shall have power from time to time to confer upon the probate court in any county in this state, general civil jurisdiction coextensive with the county; *provided, however, that such court shall not have jurisdiction* in civil causes in which the matter in controversy shall exceed in value one thousand dollars, exclusive of interest; nor in any action for malicious prosecution, divorce and alimony, slander and libel; nor in any action against officers for misconduct in office; nor in any action for the specific performance of contracts for the sale of real estate; *nor in any action for the possession of land; nor in any matter wherein the title or boundaries of land may be in dispute or drawn in question * * *.*
>
> "Any civil or criminal case pending in the probate court, in which the probate judge is disqualified, shall be transferred to the district court of the same county for trial."

In *Conley*, the matter was transferred from the probate court to the district court, and the New Mexico Supreme Court held that the district court was only acting as a probate court upon disqualification of a probate judge.

The Wyoming Constitution is vastly different. Article 5, § 10:

> "The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court * * *."

While the majority may think my position is "unique," it is practical and is the same position as that taken by the Supreme Court of California from which state our

probate code is said to have been derived.[3] *Estate of Baglione*, 65 Cal.2d 192, 53 Cal. Rptr. 139, 417 P.2d 683 (1966), held that a superior court (like Wyoming's district court) sitting in probate can determine the claim of a surviving wife to her share of community property, or adjudicate a dispute between claimants to property conceded to be or to have been acquired in the course of probate proceedings. Chief Justice Traynor, speaking for the court, outlined the whole picture and is well worth repeating in full:

"As a general rule the jurisdiction of superior courts sitting in probate to administer decedents' estates does not encompass power to pass upon assertions of title to property by parties who are not in privity with the estate but are claiming adversely to it. (*Estate of Hart*, 51 Cal.2d 819, 823, 337 P.2d 73; *Estate of Dabney*, 37 Cal.2d 672, 676, 234 P.2d 962.) There are, however, several well-recognized exceptions to this rule 'where a controversy has been held to have a sufficient connection with a pending probate proceeding to be properly litigated therein * * *.' (*Central Bank v. Superior Court*, 45 Cal.2d 10, 15, 285 P.2d 906, 909.) The connection may arise out of the relationship between the parties. Thus the superior court sitting in probate can adjudicate a claim to assets from the estate asserted by an executor or administrator in his individual capacity (*Schlyen v. Schlyen*, 43 Cal.2d 361, 372–373, 273 P.2d 897; *Stevens v. Superior Court*, 155 Cal. 148, 150–151, 99 P. 512), and it can determine whether an assignment or other transfer of the interest of an heir, legatee, or devisee to a third party is valid and order distribution accordingly. (Prob.Code, §§ 1020, 1020.1; *Estate of Stanley*, 34 Cal.2d 311, 318–319, 209 P.2d 941.) The connection may also arise out of the nature of the claim to the property. The superior court sitting in probate can determine the claim of a surviving wife to her share of the community prop-

erty (*Estate of Burdick*, 112 Cal. 387, 393–396, 44 P. 734; *Colden v. Costello*, 50 Cal.App.2d 363, 369, 122 P.2d 959) or adjudicate a dispute between claimants to property 'conceded * * * to be or to have been acquired * * * in the course of probate proceedings.' (*Central Bank v. Superior Court*, supra, 45 Cal.2d at p. 16, 285 P.2d at p. 909; *Estate of DeBarry*, 43 Cal.App.2d 715, 725–726, 111 P.2d 728.) In *Woods v. Security-First Nat. Bank*, 46 Cal.2d 697, 299 P.2d 657, we recognized a third type of exception based on the nature of the claim and the claimant's relationship to the estate. When a party invokes the jurisdiction of a court sitting in probate by asserting a substantive right in a particular piece of property or in certain assets as an heir, legatee, or devisee, he may also obtain a judgment in that court determining any additional claims that he asserts against those in privity with the estate in the same property. (Id. at p. 704, 299 P.2d 657; see *Estate of Stone*, 170 Cal.App.2d 533, 537–539, 339 P.2d 220.) The rationale for this exception is the conservation of time, energy, and money of all concerned. To deny a superior court sitting in probate the power to determine the whole controversy between the parties before it is pointless. In the exercise of its legal and equitable powers (see *Schlyen v. Schlyen*, supra, 43 Cal.2d at p. 371, 273 P.2d 897; *Estate of Cover*, 188 Cal. 133, 139, 204 P. 583), a superior court sitting in probate that his [has] jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim. A claimant is not required to sever and litigate a multi-faceted claim in separate proceedings once all the necessary parties are before the court. Thus in the instant case, once the court determined that Marie had a community interest in the Lake Tahoe property subject to probate, it should have resolved the entire controversy and determined her rights to that

**3.** The Wyoming Supreme Court gives California court decisions particular importance at least when construing Wyoming's probate stat-utes. *Estate of Kimball*, Wyo., 583 P.2d 1274 (1978); *Merrill v. District Court of Fifth Judicial Dist.*, 73 Wyo. 58, 272 P.2d 597 (1954).

property under the alleged oral agreement with the deceased. Any statements in *Sieroty v. Silver*, 58 Cal.2d 799, 26 Cal.Rptr. 635, 376 P.2d 563, and *Smith v. Smith*, 220 Cal.App.2d 30, 33 Cal.Rptr. 559, to the contrary are disapproved." 53 Cal.Rptr. at 142–143, 417 P.2d at 686–687.

A surviving wife is no stranger to the property of her husband and the estate matter. No one is more intimately interested nor more protected than the wife of a decedent. To say she is a stranger is to overlook the facts of life. In fact, in the record of this appeal she is named in the will as one of its executors, though she was not one of the executors petitioning for ancillary probate. No one could be less a stranger. See fn. 1.

California is not the only enlightened jurisdiction. In Oklahoma, where there was a dispute between the daughter and spouse of the deceased joint tenant, and no third party (outsider) to the estate, the court in *Matter of Lindell's Death*, Okl.App., 573 P.2d 716, 720 (1977), said this:

> "We feel compelled to point out herein the necessity for settling the law for practical reasons regarding a district court's being unable in one capacity to decide an issue that the same judge could decide while sitting in another capacity. In Oklahoma, after court reform, as pointed out in Duke, the district court was conferred with unlimited original jurisdiction in all justiciable matters except as was otherwise provided by law. We can see no law or logical reason why a district court in Oklahoma cannot determine all of the issues in a case without the necessity of at least two separate actions being filed, that is, (1) a probate proceeding, and (2) an action to determine title. Any other procedure appears to be somewhat inconsistent. For example, on the one hand it appears that the district court must sit in dual capacities because there is a probate proceeding and an action to determine title, whereas on the other hand, if the court in a probate proceeding admits or denies a will to probate no appeal is taken to the district court as in the past, but it goes directly to the appellate court. It is clearly the law in Oklahoma that the district court is the successor to the jurisdiction of all other trial courts which included the county court, and therefore has jurisdiction to determine all of the issues in one capacity. This of course would do away with the necessity of filing two separate lawsuits involving two separate sets of notice, hearings, and responsive pleadings. "As we see it, the only possible rationale for the cases which conclude that the district court must sit in a dual capacity—that is, hear two separate lawsuits— is because originally there were two separate courts which now have become one. Yet, to follow the reasoning in Jones, Duke, and Kizziar, the court cannot sit as one court but still has to sit as two. Why a judge must hear only one part of a case and, before hearing the remaining issues of the case or additional issues, he or she must get up and walk across the hall to another court escapes us. We find nothing in the statutes nor has anything been called to our attention which makes such a procedure mandatory for the same trial judge to change chairs depending upon the type of action or actions pending before the court. This seems to go against the very letter and spirit of the statutory court reform in Oklahoma. We are not unmindful of the fact that in numerous cases throughout the state of Oklahoma trial judges will consolidate the two proceedings to resolve all of the issues by one set of hearings."

Oklahoma's "reform" brought the Oklahoma judicial system into a position having the same status as that in Wyoming.

In Idaho, the rule is well settled by a string of cases summarized in *Pincock v. Pocatello Gold and Copper Mining Company, Inc.*, 100 Idaho 325, 597 P.2d 211, 215 (1979):

> " '[T]he probate courts have exclusive, original jurisdiction in the settlement of estates of deceased persons, and it is within the jurisdiction of those courts to determine who are the heirs of a deceased

person and who is entitled to succeed to the estate and their respective shares and interests therein. The decrees of probate courts are conclusive in such matters. A probate court, however, does not have jurisdiction to determine adverse claims or an adverse title to real estate, *except in so far as such questions arise between the heirs or devisees of an estate, and are necessary to be determined in the administration of the estate.* No such jurisdiction, however, exists in the probate court to determine and adjudicate adverse and conflicting claims to title to real estate as between the estate or heirs thereof and third parties, and such issues can only be tried in a court of competent jurisdiction where the issue as to title and interest is directly and squarely made and presented to the court.' "

In Kansas, like the language of Art. 5, § 10, Wyoming Constitution, supra, giving the district court exclusive jurisdiction in probate, in *Adams v. Adams,* 4 Kan.App.2d 1, 602 P.2d 115 (1979), review denied (1980), it is declared that the probate court is to administer all property of the decedent which encompasses the power "to determine a question of title to or ownership of property when necessary to final settlement and distribution, unless the probate code expressly provides otherwise. This includes a question regarding title to real estate and applies whether the decedent died testate or intestate." The Kansas court expressed its concern regarding the state of title where such problems are fully settled in the probate matter without any question being raised as to the jurisdiction of the court to do so. See also, *Gonzalez v. Superior Court in and for County of Pima,* 117 Ariz. 64, 570 P.2d 1077 (1977). In *Snow v. Martensen,* 255 Ark. 1049, 505 S.W.2d 20 (1974) it was held that heirs and beneficiaries under a will are not strangers to an estate, and the probate court has jurisdiction.

From all of the foregoing I am of the opinion that the jurisdiction of the district court in probate matters is sufficiently wide so that it can make complete disposition of all matters affecting the estate of a decedent and thus make it unnecessary to initiate separate proceedings in the same court at oppressive additional expense and unnecessary delay. We should not thwart the granting of complete justice in one place.

This is the second case before us in which the district court and counsel have assumed—I am convinced properly—to settle matters of title. I can imagine that there are many others which must exist where the district court's jurisdiction was never questioned. The majority's opinion and decision raise the spectre of title being challenged for years to come; at least until curative statutes take over. It must be realized that this court has never before, except in the *Estate of Scott,* supra, 642 P.2d at 1289, raised the question that the district court in probate could not settle title to property as between heirs, devisees and legatees. It is so unreasonable to believe that a probate court is not intended to do that. It is logical that the clear language of § 2-2-101, W.S.1977, " * * * [t]he court granting the letters *has exclusive jurisdiction of all matters touching the settlement and distribution of the estates for which letters have been granted,"* (emphasis added) means what it says.

## PART II

Maintaining the fictional line drawn between the district court sitting in law and equity and sitting in probate amounts to a pagan worship of the idol of stare decisis even which was misapplied in this case. It is a vestige of archaic times. We no longer require separate actions to be filed on the equity side of the district court. The same judge, the same clerk of court, the same courthouse, and the same courtroom all serve the district court in all its functions. I notice from the record that all the filings in this case are captioned "In the District Court, Second Judicial District." Some say "Probate Docket No. 4814" or "Probate No. 4814." The "probate court" is nothing more than a docket book or filing cabinet. In neither this case nor Estate of Scott, supra, did either the district judge or counsel realize that they were not in the district

court and before the district judge. They went ahead, unaware that they were surrounded by a mystical presence where they should not have been and their time and effort were being frittered away.

To require a separate action to be filed in order to satisfy precedent, even if it existed as to the particular question we have here as to a matter already tried or which can be tried and decided in a single proceeding, is the ultimate in judicial inefficiency. It makes about as much sense as having two benches in the courtroom, one to sit at when handling law and equity cases and another when handling a probate matter, or requiring different colored robes, black when sitting in law and equity, purple when sitting in probate.

I have examined the source of this rule which the majority attributes to *Church v. Quiner*, supra, 31 Wyo. 222, 224 P. 1073. *In Re Black's Estate*, supra, 30 Wyo. 55, 216 P. 1059, is another. In the last cited case, there was adopted the language of *In Re Strong's Estate*, 119 Cal. 663, 51 P. 1078, an 1898 case, which held that whenever the acts of the court in probate, though a court of general jurisdiction, are without the limits of the special jurisdiction conferred, they are nugatory and have no binding effect even upon those who invoked its authority. The rule is without reason as applied by the majority in the appeal before us. It would have been simpler to say "the district court has jurisdiction but does not have jurisdiction." Nowhere in the relied upon cases is the reason for such a conclusion stated, nor do I think it is within the spirit of the Wyoming Constitution, Art. 5, § 10:

> "The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by

law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, injunction and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective districts."

I need to see something there which prohibits the district court settling title in this estate matter. The statute, § 2–2–101, W.S.1977, a part of the Wyoming Probate Code recently readopted, but which has been on the books for years, including during the entire period of the administration of the estate we now consider, contains no prohibition that I can see:

> "The *district courts* of the state *have exclusive original jurisdiction of all matters* relating to the probate and contest of wills and testaments, the granting of letters testamentary and of administration, and the settlement and distribution of decedents' estates. *The court granting the letters has exclusive jurisdiction of all matters touching* the settlement and distribution of the estates for which letters have been granted."

"[A]ll matters" and "all matters touching the settlement and distribution of the estates for which letters have been granted" seem pretty all-inclusive to me. Under that language, I believe a complete disposition can and should be justified.

When the new Wyoming Probate Code was adopted, one of its purposes was to "[p]romote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors." Section 2–1–102(a)(iii), W.S.1977.[4] That is

4. The entire statement of policy, § 2–1–102, W.S.1977:

"(a) This code shall be liberally construed and applied, to promote the following purposes and policies to:

good policy any time. We can start by throwing out an ancient concept no longer valid, intended only for jurisdictions where separate and distinct courts exist.

## PART III

What follows is the substance of the original form of opinion which I tendered to the other members of the court. After tender, Estate of Scott, supra, was formulated and published and in the interest of what it considered consistency, the majority apparently felt obligated to take the same stance in this case. Even if I could agree with the majority opinion as to probate jurisdiction in the Estate of Scott case, the appeal before us is factually different and falls specifically within the provisions of § 2–6–104, W.S.1977, infra, a new section of the Wyoming Probate Code, having to do with the choice of law as to the meaning and effect of wills executed in another state. A full development of my position requires that I compose the opinion as I hereinafter do in order to weave a complete fabric.

In the matter before us, the district judge decided that the law of Texas recognizing community property between husband and wife, both residents of Texas, is inapplicable in Wyoming as to property in Wyoming. The surviving spouse, aggrieved by that ruling, appeals raising as issues:

"1. Whether a decedent's widow is entitled to one-half of all of the Wyoming mineral interests in the decedent's name where those interests were acquired with community funds.

"2. Whether the decedent intended to leave only one-half of the mineral interests to the residuary beneficiary under his will."

"(i) Simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors and incapacitated persons;

"(ii) Discover and make effective the intent of a decedent in distribution of his property;

"(iii) Promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors;

"(iv) Facilitate use and enforcement of certain trusts.

"(b) Unless displaced by the particular provisions of this code, the principles of law and equity supplement the code provisions.

I would have reversed the district judge.

The facts before the district judge and this court are stipulated:

"Donald D. Harrington died on April 27, 1974. At the time of his death, he was a resident of Potter County, Texas, and left an estate in the Counties of Carbon and Campbell, Wyoming. His estate in these counties consisted of royalty mineral interests having an appraised value of $1,089,030.00, which interests are more particularly set forth in the inventory and appraisement filed herein. His sole surviving heir was his widow, Sybil Buckingham Harrington, of Amarillo, Texas. Mr. Harrington left a Last Will and Testament, which, in addition to a number of specific bequests, gave, under Section Five thereof, to his wife, an amount equal to the maximum 'marital deduction allowed his estate under the Internal Revenue Code,' which amount was satisfied out of other properties in the estate in the probate thereof in the County Court, Potter County, Texas. All of the specific bequests and the marital deduction bequest to the surviving spouse being satisfied out of assets outside of the State of Wyoming, the assets in the State of Wyoming are subject to distribution under the residuary clause, Section XII, of the Last Will and Testament. Under this residuary clause, the residuary of the estate was given to The Don & Sybil Harrington Foundation, a non-profit Texas corporation, organized and operated exclusively for religious, charitable and educational purposes. The Last Will and

"(c) This code is a general act intended as a unified coverage of its subject matter and no part of it shall be deemed impliedly repealed by subsequent legislation if it can reasonably be avoided.

"(d) The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this code. It shall also govern further procedure in proceedings in probate then pending unless the court determines its application in particular proceedings or parts thereof is not feasible or will work an injustice, in which event the former procedure shall apply."

Testament of said decedent was duly admitted to probate in the Probate Court of Potter County, Texas, and upon petition for ancillary probate of said Will, it was admitted to probate in the District Court of Carbon County, Wyoming, on January 22, 1975. After publication of notice of final settlement, the Executors filed a first and final account and petition for distribution of the estate herein on November 28, 1980. On December 8, 1980, Sybil Buckingham Harrington, the surviving spouse of Donald D. Harrington, Deceased, filed herein her objections to first and final account and petition for distribution of estate, claiming that all of the assets of the estate situated in the State of Wyoming were acquired with community property funds and, therefore, as the owner of one-half of the community property funds the surviving widow is entitled to one-half of the assets of said estate situated in the State of Wyoming.

"The title to all of said mineral interests are in the name of the decedent, Donald D. Harrington. The executors admit and it can be agreed as a matter of fact that all of the assets were acquired with community property funds of the decedent and the surviving spouse.

"The Wyoming Inheritance Tax Department and the Internal Revenue Service have recognized the community property interests of Mrs. Harrington and accepted one-half of the appraised value for state inheritance and federal estate tax purposes."

Notice of time for proving will was served by public action and mailing. Both the "First and Final Account and Petition for Distribution of Estate" and the "Objections" thereto were served on The Don & Sybil Harrington Foundation. The majority is mistaken when it asserts that service of these documents was not made upon the heirs. Service was made.[5] The Foundation made no appearance in the district court, nor did any heir, devisee or legatee. This indicates that all devisees and legatees had been satisfied from Texas estate assets. Due process in all respects was present. In the recent opinion in *Stagner v. Wyoming State Tax Commission and State Board of Equalization,* Wyo., 642 P.2d 1296 (1982) it was held that the law is elementary that whatever puts a party on inquiry amounts to "notice," citing *Rodin v. State,* Wyo., 417 P.2d 180, 195 (1965). Vast estates are settled on the basis of the statutory notices provided for in estate matters.

The executors (appellees) commendably take a position of impartiality and look to this court only for direction in the distribution of estate assets located in Wyoming. They rely on *In Re Ray's Estate,* 74 Wyo. 317, 287 P.2d 629 (1955) which held that the devolution of real property in this state and the effect of the decedent's will must be determined by the laws of this state—and the doctrine of comity does not apply. In *Ray's Estate,* a Nevada resident omitted a natural child from his will and under the requirement of a Nevada statute did not state an intention to do so. A Nevada court held that the pretermitted child was entitled to one-third of his father's estate. This court refused to conform itself to that law and held the son not entitled to any of the property of his deceased father located in Wyoming. *I point out that this determination of title to property was made by this court in a proceeding on objections to the executor's final report, just as here. No separate suit was required.*

See also, *In Re Smith's Estate,* 55 Wyo. 181, 97 P.2d 677 (1940) involving a deceased domiciled in Colorado at the time of her death and leaving a bank deposit and real estate in Wyoming. It was held that the distribution of the personalty would be in accordance with the laws of Colorado and

---

5. Section 2–11–104, W.S.1977 pertaining to admission to probate of foreign wills was followed explicitly. In addition, though apparently not necessary, actual service of the notice was made on all heirs, devisees and legatees to satisfy § 2–11–105, W.S.1977. Notice of filing of Final Settlement of Estate was actually served on all heirs, devisees and legatees. The objections to the First and Final Account were actually served on all heirs, legatees and devisees.

the realty would be distributed according to the laws of Wyoming. The factual surroundings were that the deceased was widowed in Wyoming. Two years later she executed a will in Wyoming, leaving all her property to her four children. The next day after execution of the will, she married a Denver, Colorado resident and moved with her children to that state where they resided until her death some ten years later. Her husband objected to the admission to probate of the Wyoming will on the ground that under Colorado law a last will and testament is revoked by subsequent marriage. This court held that not to be the law of this state. *I point out that this appeal settled questions pertaining to property on objections filed in the probate matter. No separate suit was required.*

I have no quarrel with these cases. They did not involve community property and are not in point as I shall later explain.

The appellants acknowledged in the district court that the royalty mineral interests were real property, *Hageman & Pond, Inc. v. Clark*, 69 Wyo. 154, 238 P.2d 919 (1951). The law of Texas also holds that oil and gas in place are part of the realty and an oil and gas lease transfers an interest in real estate to the lessee. *Hammonds v. Commissioner of Internal Revenue*, 106 F.2d 420 (10th Cir. 1939).

The misconception of the district judge on the merits arises because the question has been mistakenly viewed. The real attack is on an effort to distribute property of which decedent did not die seized but was included in the Wyoming estate proceeding inventory. The subject matter was not property of the decedent. The district court's action would distribute property to a residuary devisee and legatee not belonging to decedent, but which was owned by the appellant. The district judge did not recognize that the decedent was the owner of only a half of the property it is attempting to set over to a residuary devisee and legatee. As said in § 3, pp. 7–8, 1 Principles of Community Property, de Funiak (1943):

"Because the legal concept of the community property or ganancial system is so

foreign to that of the common law, it is frequently very difficult for the judge or lawyer, trained and versed in the common law, to grasp and understand its principles. He usually makes the primary mistake of trying to understand it and interpret it by the principles and terminology of the common law; a most serious mistake, for those principles and terminology are not in the least applicable. * * *" (Footnotes omitted.)

In a nutshell, the community property system is generally as described by de Funiak, § 1 pp. 1–7:

"Community of property between husband and wife is that system whereby the property which the husband and wife have is common property, that is, it belongs to both by halves. There are varying forms of this marital community of property system, ranging from the general community, of which the Roman-Dutch law is an example, in which all the property of the spouses owned by each at the time of the marriage, as well as all that acquired after marriage, becomes a part of the community property; to the community only of acquests and gains during the continuance of the marriage. It is this latter or ganancial system and which came to this country from Spain which prevails in several of our American states, specifically, in Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Oklahoma, Oregon, Texas and Washington. It includes the property earned or gained by onerous title by either during the union, as well as that given to both during the marital union. All property which they possess is presumed to be held and owned by them in common unless or until it is proved to be the separate property of one of them. In respect of separate property each spouse is equally capable of owning separate property, and separate property owned by either before marriage continues to constitute separate property of that spouse during marriage. Likewise, property given to one spouse alone, during marriage, is the separate property of that spouse. The

community property system is marked by two essential characteristics: (1) the transmissibility of the wife's interests to her heirs, so that if the wife dies first, her heirs take the share to which she would have been entitled if she had survived; and (2) during the existence of the marital relationship the spouses are the joint owners, or partners, with respect to gains and losses. This is not to say that the husband's interest is not also transmissible to his heirs if he dies first, but the point of the essential characteristic relating to the wife is that she is placed on a basis of equality with the husband as to her ownership and rights in the community property. The essential characteristic as to the joint ownership or partnership in the acquests and gains is also particularly to be noticed. Not only are the spouses on the same plane of equality as to ownership but the matter of ownership is of primary importance, as compared with the English common law principle of giving primary importance to the technical matter of in whose name title appears.

\* \* \* \* \* \*

"Under the community or ganancial system the wife retains her own personality as an individual and is an equal partner with the husband in the conjugal relationship. Moreover, her property rights and her rights to enter into transactions with her husband as an equal have long represented in the community property system the advanced state that is only now being reached through statutory modifications in common law jurisdictions. This recognition of the wife as a person in her own right is one of the outstanding principles of the civil law and is one of those in which it diverges sharply from the common law. \* \* \* " (Footnotes omitted.) [6]

**6.** For a most enlightening dissertation, see XIX Baylor Law Review 20, The Policy of Community Property and Interspousal Transactions (Michael J. Vaughn 1967).

**7.** The words "shall be" were replaced by the legislature in 1980 with the word "is."

In this case we are dealing with a conflict-of-laws question. The events and transactions in the case before us has a significant relationship with the state of Texas. In such case, we have what is referred to as a "choice of law." Section 6, Restatement, Conflict of Laws 2d, explains the principles of choice of law:

"(1) A court, subject to constitutional restrictions, *will follow a statutory directive of its own state on choice of law.*

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied." (Emphasis added.)

We do have a statute. The legislature rather recently passed what is known as the Wyoming Probate Code, ch. 142, S.L.Wyo. 1979. Section 1 includes:

"*2–6–104. Choice of law as to meaning and effect of wills.* The meaning and legal effect of a disposition in a will shall be [7] determined by the law of the state in which the will was executed, unless the will otherwise provides or unless the application of that law is contrary to the public policy of this state otherwise applicable to the disposition." (Now § 2–6–104, W.S.1977.[8])

**8.** Section 2–6–104, W.S.1977 seems to be a slight modification of § 2–602 of the Uniform Probate Code:

"The meaning and legal effect of a disposition in a will shall be determined by the local law of a particular state selected by the testator in his instrument unless the application of

Section 6, chapter 142, S.L.Wyo.1979, provides:

"This act is effective April 1, 1980. The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this code. It shall also govern further procedure in proceedings in probate then pending, except to the extent that, in the opinion of the court, its application in particular proceedings or parts thereof would not be feasible or would work injustice, in which event the former procedure shall apply." [9]

The first and final report and petition for distribution was filed on November 28, 1980. On December 8, 1980, the surviving spouse filed her objections claiming her ownership of one-half of the community property. On the date when the question arose, there was before the court a statutory directive to follow the law of the state in which the will was executed. There is nothing in the stipulated facts that it is not feasible to or that it would work an injustice to apply the Texas law of community property and set over to the wife or declare community property to which she is entitled, hers.

There is no public policy of this state contrary to such a disposition that I know of or which has been called to our attention. In its general sense, public policy has reference to the law of a state embodied in its constitution, statutes and decisions of its courts, when they have not spoken, against anything which tends to undermine that sense of security for individual rights, whether liberty or private property, which any citizen ought to feel has a tendency to be injurious to the public good. *Higgins v. Nationwide Mutual Insurance Company*, 50 Ala.App. 691, 282 So.2d 295, 298 (1973); *Dairyland County Mutual Insurance Com-*

*pany v. Wallgren*, Tex.Civ.App., 477 S.W.2d 341, 342 (1972); *Craemer v. Superior Court In and For County of Marin*, 265 Cal.App.2d 216, 71 Cal.Rptr. 193, 199 (1968); *In Re Barnes' Estate*, 256 Iowa 1043, 128 N.W.2d 188, 192 (1964).

As a matter of interest, the basic features of the community property doctrine enjoy a commendable purpose:

"One concept behind the community property system is that with certain exceptions, property acquired during marriage is as much that of the wife as of the husband. In general, the basic intent of community property laws is to provide a return to the wife for her labors in the home, which are legislatively considered to be substantially commensurate with the efforts of the husband in marital economic gain, and to place husband and wife on an equal footing as to their property rights. In theory, the marital relationship, in respect to certain property acquired during its existence, is a community of which each spouse is a member, contributing by his or her industry to its prosperity, and possessing an equal right to succeed to the property as survivor." (Footnotes omitted.) 15A Am.Jur.2d Community Property, § 6, p. 635.

I see nothing in such concept offensive to any public policy of Wyoming.

The Wyoming cases relied on by the district judge announce no public policy inconsistent with our use of Texas law in disposition of this case. *In Re Smith's Estate*, supra, involved a will made and executed by the decedent in Rock Springs. This does not deviate from the declaration of § 2–6–104, supra, that the law of the state where executed is given legal effect. The Wyoming case of *In Re Ray's Estate*, supra,

---

that law is contrary to the public policy of this state otherwise applicable to the disposition."

Since the decedent was a resident of Texas, domiciled there, and executed his will in that state, that would certainly be the state selected by him. The purpose of the section as expressed in the comments of the compiler was to permit a testator to select the law of a particular state for purposes of interpreting his

will without regard to the location of property covered thereby. The comment goes on to say that as long as public policy is accommodated, the section should be accepted as necessary and desirable to add to the utility of wills.

9. Chapter 54, S.L.Wyo.1980, repealed, amended and renumbered various sections of ch. 142, S.L.Wyo.1979, but did not disturb § 2–6–104 or this section, except as noted in fn. 7.

would have created an injustice if the Nevada law, the place of execution, had been applied in Wyoming. Justice Blume expounded at length in that regard:

"* * * Whether these decisions are right or wrong, the fact remains that so far as the record shows the widow of decedent, the principal beneficiary of the will is left utterly penniless so far as Nevada is concerned. That leaves us somewhat perplexed. One cannot help but wonder whether a penalty clause like paragraph tenth of the will, doubtless taken out of some form book, could apply to a person for whose chief benefit the will was made. This court is now asked to complete what was done in Nevada, strip the widow of all property rights and leave her penniless also so far as this state is concerned. They ask that in the name of the law, contending that this court is bound to follow the path laid out for us by the Nevada courts. We might say parenthetically that the ultimate cause of this unfortunate situation is probably, or not unlikely, the fact that Carl Ray, ashamed of his conduct and his record of his younger days, attempted to keep the memory of his life clean in the eyes of his wife and his adopted daughter, and felt that he could not do so by naming in his will a son with a different name than his own. The course taken was, of course, a mistake. Had he confided in his counsel the difficulty, or what he thought was a difficulty, could doubtless have been easily remedied. The testator had forgotten that children, through greed or injured pride, at times mercilessly expose to the public a parent's shame and misconduct, long hoped for by the latter to have been forgiven and forgotten." 287 P.2d at 632–633.

This likewise is consistent with § 2–6–104, supra, in that an injustice resulted if the Nevada law was adopted.

I see nothing bad about the Texas law which would conflict with the law of Wyoming. Section 2–6–104, supra, leaves this court with the comparatively simple job of ascertaining the law of Texas and applying it. The parties agree that Texas is a community property state[10] and that all of the Wyoming assets were acquired with com-

---

**10.** Vernon's Texas Codes Annotated, Family Code, provides:

Section 5.01. *Marital Property Characterized*

"(a) A spouse's separate property consists of:

"(1) the property owned or claimed by the spouse before marriage;

"(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

"(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

"(b) Community property consists of the property, other than separate property, acquired by either spouse during marriage."

Section 5.02. *Presumption*

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."

Section 5.21. *Separate Property*

"Each spouse has the sole management, control, and disposition of his or her separate property."

Section 5.22. *Community Property: General Rules*

"(a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:

"(1) personal earnings;

"(2) revenue from separate property;

"(3) recoveries for personal injuries; and

"(4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control, and disposition.

"(b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement.

"(c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney in writing or other agreement."

Prior to amendment of § 5.22, community property was under the management of the husband. This is of no concern, however, in the appeal before us.

munity property funds of the decedent and the surviving spouse.

Under the community system the wife's one-half ownership of community property is a present, equal and existing interest during the marriage and equally recognized upon the death of her husband. She does not take by inheritance in that her ownership of half the community property was full and complete during the marriage. No new interest is created in the wife by her husband's death; it only terminates the husband's interest in the community estate. This is formalized in *Jones v. State*, Tex. Com.App., 5 S.W.2d 973 (1928):

" * * * It is undisputed that all of the estate possessed by the testator was community property. As matter of law, the wife was the equal owner in her own right of one-half of that estate. To be sure, their estates existed in common, and during the marriage the common estate was indissoluble, but nevertheless her right, subject to certain statutory control, was the equal of the husband's. Upon the husband's death, the community estate passes, one-half to the widow and one-half to the children (where there are children). But, while this provision of the law is found in our statutes of descent and distribution, nevertheless the wife's taking her one-half of the community is not the taking by an heir. She does not inherit such one-half, but she takes it as owner in her own separate right after the dissolution of the marriage. *King v. Morris* (Tex.Com.App.) 1 S.W.2d 605. * * * " 5 S.W.2d at 975.

The law has been long settled in Texas that the surviving spouse owns a one-half interest in all of the community properties at the death of the other spouse. *George v. Taylor*, Tex.Civ.App., 296 S.W.2d 620 (1956); *Commissioner of Internal Revenue v. Chase Manhattan Bank*, 259 F.2d 231 (5th Cir. 1958), and the many cases there cited. On the death of the husband, the community is dissolved and the widow holds her interest

as a tenant in common, *Waterman Lumber & Supply Co. v. Robins*, Tex.Civ.App., 159 S.W. 360 (1913), subject only to the payment of community debts, *Caddell v. Lufkin Land & Lumber Co.*, Tex.Com.App., 255 S.W. 397 (1923).

Section 234, Comment "a," Restatement, Conflict of Laws 2d, summarizes the rule applied by courts of the forum where land is purchased by one spouse from community funds in his name alone:

"a. The forum will attempt to decide questions as to the effect of marriage upon an interest in land acquired during coverture in the same way that these questions would have been decided in the very case at hand by the courts of the situs. These courts would not always decide such questions in accordance with their own local law. They would usually hold that any marital property interests which the spouses had in the funds or other property exchanged for the land have been transferred to the land itself. So if land in a common law state is purchased with funds that are held in community because acquired while the spouses were domiciled in a community property state (compare § 258), the courts of the situs would usually hold that the spouses—at least as between themselves—have the same marital property interests in the land as they formerly had in the funds. * * * "

This court need not deal with the second issue, in that the intent of the testator is immaterial in the light of the agreed statement that community property funds were used to acquire the Wyoming property and the Texas statute-based presumption that property acquired by either husband or wife is community property.

I would have reversed and remanded with directions to enter an order of distribution in form and substance consistent with this opinion,[11] declaring appellant own-

11. The district judge made an improper disposition in declaring "Accordingly, I * * * leave the parties where I find them." Leaving the parties where the court finds them is a rule

applied to illegal contracts. *Town of Cody v. Buffalo Bill Memorial Ass'n*, 64 Wyo. 468, 196 P.2d 369 (1948). There is no illegal contract here nor was that even a question. In any

er of one-half of the community property in Wyoming.

BROWN, Justice, dissenting.

It is difficult for me to understand the basis for affirming the trial court. Affirming the trial court leaves its judgment intact, yet the majority says that the court did not have jurisdiction to do what it did.

The majority suggests that the surviving spouse may pursue a quiet title action in the district court or ask that court to impose a "constructive" trust (technically, a resulting trust) for her benefit. I suppose it logically follows, according to the majority, that any title to property derived through a decree of distribution is untrustworthy and that proceedings in the district court are necessary to properly vest title. This will be a bonanza for lawyers. They can now collect a fee for probate, then another fee to quiet title. This will be difficult for clients to understand.

I agree with the introductory paragraphs and parts I and II of Justice Raper's dissent. However, on the merits I would reach the same result but on a different theory.

The problem here is one concerning title to property and distribution of the property under the terms of the will, and because of that, it should be decided according to Wyoming law. It is a basic principle that the law of the situs controls as to real property. 5A Thompson on Real Property, § 2601, p. 275 (1978). Title to real property is governed exclusively by the law of the place where the land is situated. *Brown v. Commissioner of Internal Revenue*, 180 F.2d 946 (5th Cir. 1950). The rule exists because it is particularly important that there be certainty, predictability and uniformity of result and ease in the determination and application of the law to be applied concerning transactions of land.

In this case, the decedent and spouse resided in and owned most of their property in Texas, a community property state. The title to the real property in Wyoming, however, was only in the decedent's name; but it was stipulated that community funds were used to purchase the property.

It is an accepted rule of equity jurisprudence that when property is purchased in the name of one party and another has furnished consideration therefor, a trust results in favor of the latter. *Culver v. Graham*, 3 Wyo. 211, 21 P. 694 (1899). Such a trust is called a purchase money trust, which is a resulting trust. The rule is that, except in states where the rule has been abolished by statute, a resulting trust arises where a transfer of property is made to one person and the purchase price or part of the purchase price is paid by another. Scott on Trusts, §§ 440, 454, (3rd Ed. 1967).

In the case where the person in whose name title is taken has intended no fraud, but has instead intended that the transaction be a fair one,

" * * * a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. Intention and consideration are essential elements of a resulting trust. * * *" *Cacy v. Cacy*, Okl., 619 P.2d 200, 202 (1980).

The intent can be actual, but it can also be inferred from the terms of the transaction, or from accompanying circumstances. A resulting trust, then, is an intent-enforcing trust.

This court said in *Nussbacher v. Manderfeld*, 64 Wyo. 55, 186 P.2d 548, 554 (1947):

" 'A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise.' " Citing Restatement of the Law of Trusts, § 441.

We went on in *Nussbacher v. Manderfeld*, supra, to cite § 442 of Restatement of the Law of Trusts:

" 'Where a transfer of property [oil royalties here] is made to one person [the

event, I can see that the district judge denied appellant's objections to the final accounting.

husband here] and the purchase price is paid by another [the wife here] and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter [payor] manifests an intention that the transferee should not have the beneficial interest in property.' "

The usual rule, then, is that a resulting trust does not arise unless the payor manifests an intention that a resulting trust should arise by indicating in some way that the transferee does not get a beneficial interest in the property. That rule is now set out in Restatement (Second) of Trusts § 442, but "Comment a" states that the rule does not apply where the wife is the payor and the husband is the transferee, which is the case here. There is one majority rule when the wife is the payor, and a converse majority rule when the husband is the payor.

"  *  *  *  The majority rule is that there is a presumption of a resulting trust in favor of the wife even though title may have been taken in the name of the husband. The *reverse* is true where the husband supplies funds for the purchase of property taken in the wife's name. *  *  * " (Emphasis added.) *Little v. Alder*, 19 Utah 2d 163, 428 P.2d 156, 157 (1967).

The United States Supreme Court said in *Stickney v. Stickney*, 131 U.S. 227, 239, 9 S.Ct. 677, 680, 33 L.Ed. 136, 143 (1889): "  *  *  *  We think that whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him." [1]

Many recent cases have followed this rule, although they seem to be based on the rationale of the older cases which assumed that the husband dominated the wife. The presumption "  *  *  *  was a valiant effort to overcome the lowly position of the married woman in the law." *Tarkington v. Tarkington*, 45 N.C.App. 476, 263 S.E.2d 294, 297 (1980). There is perhaps a question of the validity of such a presumption in contemporary marriages. One could, however, also question the validity of the presumption set forth in *Nussbacher v. Manderfeld*, supra, that the law will presume that a resulting trust in favor of the husband does not arise when the husband is the payor and the wife is the transferee. The presumptions are not necessarily determinative, since they can be rebutted, but they may carry too much weight:

> "  *  *  *  The presumptions, however, are given undue weight. Indeed, in some decisions it has been stated that they can be rebutted only by very strong, clear or even conclusive or indubitable evidence. Such a rule clearly gives too great weight to the relationship between the parties. The question is really one of intention as shown by all the circumstances. The notion that intention can be determined by the application of hard and fast rules of law is common in primitive systems of law, but it tends to disappear as courts and lawyers become more sophisticated." Scott on Trusts, § 442 (3rd Ed. 1967).

In light of that reasoning, and in the context of the present day, some courts have done away with the presumption of a resulting trust for the benefit of the wife. *Hogan v. Hogan*, 286 Mass. 524, 109 N.E. 715 (1934); and *Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952).

The presumption that the wife does not intend a gift is also based upon the proposition that under the common law the wife has no duty to support the husband, while the husband does have a duty to support the wife. *Little v. Alder*, supra. Wyoming sets out a statutory duty of the husband to support the wife in §§ 20–2–102 and 20–3–101, W.S.1977. One could argue that a duty also exists for the wife to support the husband under Art. 6, § 1 of the Wyoming

---

1. See Scott on Trusts, § 442, (3rd Ed. 1967), and *McGean v. McGean*, D.C.App., 339 A.2d 384 (1975); *Braly v. Braly*, 244 Ga. 773, 262 S.E.2d 94 (1979); *Savell v. Savell*, Miss., 290 So.2d 621 (1974); *Ford v. Simpson*, Tex.Civ. App., 568 S.W.2d 468 (1978).

Constitution, which states that male and female citizens are to enjoy equal rights under the law, including the right to protection by the laws. *Ward Terry and Company v. Hensen*, 75 Wyo. 444, 297 P.2d 213 (1956). Be that as it may, the facts of this case seem to offer no compelling reason to change this longstanding presumptive rule. A resulting trust has as its basic objective the recognition and protection of property rights that have arisen in an innocent party.

"* * * The vital tenet is one of equity. Where the consideration for the property is provided by one party, but title is taken by another, and the circumstances negate the possibility of the consideration being a gift, equity will intervene to protect the rights of the first party. * * *" *Cummings v. Tinkle*, 91 Nev. 548, 539 P.2d 1213, 1214 (1975).

Courts are sometimes reluctant to impose resulting trusts because of the easy possibility of the perpetration of a fraud, to the injury of creditors. For that reason, the evidence of payment by the beneficiary must be clear and convincing.

"* * * The easy possibility of the successful perpetration of a fraud, to the injury of creditors when equitable interests are claimed by reason of a resulting trust, has led the courts of equity to * * the rule that the evidence of the payment by the beneficiary 'must be clear, strong,

unequivocal, unmistakable, and beyond doubt.' * * *" *Culver v. Graham*, supra, 21 P. at 695.

Here, there is no one to defraud. There are no unsatisfied creditors; the executors of the estate take a neutral position; no beneficiaries assert that there was any intent on appellant's part to make a gift; appellant contended that she contributed 50 percent of the funds used to purchase the property, and both parties stipulated that community property funds were used. In view of the fact that there is no one who could be defrauded, and in view of the unrebutted presumption in favor of the appellant, the evidence in this case would seem to support a finding that there was no intention on appellant's part to make a gift to her husband.

A resulting trust, therefore, should be imposed on the Wyoming property in favor of appellant. Imposing a resulting trust in favor of appellant seems to be the least complicated way to vest title in appellant.